UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ECHOMAIL, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN EXPRESS CO. and IBM CORP., <br><br> Defendants. | CIVIL ACTION NO. 05-11318 |

## DEFENDANT AMERICAN EXPRESS COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff EchoMail, Inc. ("EchoMail") completely fails to carry its burden to obtain the extraordinary relief of a preliminary injunction. EchoMail's trade-secret claim fails because, during the Technical Due Care Review (described by EchoMail as an "Architecture Review"), defendant American Express Company ("AXP") was only provided with information at a conceptual level, and did not review any computer code. The limited information AXP received does not rise to the level of a trade secret, and would not make it possible to recreate EchoMail's product. No information was wrongfully acquired because any information that AXP received was voluntarily provided by EchoMail. There are no allegations that AXP obtained material or information beyond what EchoMail chose to provide.

AXP is not using any EchoMail technology and has no plans to develop any similar technology or compete with EchoMail. Instead, AXP is seeking to find a vendor to perform the e-mail processing function that EchoMail previously performed. EchoMail thus has failed to demonstrate any harm, and certainly not irreparable harm. On the other hand, many AXP business units have not been able to receive any e-mails

from customers due to EchoMail's breach of the parties' agreement. EchoMail willfully and maliciously breached its agreement with AXP by unilaterally deciding that it simply no longer would perform, and thus has caused and continues to cause severe damage to AXP. EchoMail also continues to hold confidential AXP customer information without justification and despite AXP's demand for its return.

While EchoMail complains about information provided to defendant IBM Corporation ("IBM"), such information was provided by EchoMail to IBM directly. The IBM personnel were not trying to hide their identity, as an IBM representative identified himself as such during the conference call at issue. EchoMail never raised any concern regarding IBM until AXP informed it weeks later in a conference call on May 24, 2005 that its product performed poorly in the Review and AXP was moving from a Request for Information ("RFI") to a Request for Proposal ("RFP") in light of the continuing poor performance of EchoMail. At EchoMail's request, AXP agreed to defer the RFP until a meeting took place on June 6, 2005 and an exchange occurred between the parties regarding the findings of the Review. Despite that agreed course of action, on May 26, 2005, EchoMail wrote to AXP's CEO and advised that it was terminating the agreement because of the "abusive treatment" it had received in a call with an AXP representative that day. EchoMail stopped performing the next day.

Thus, EchoMail's actions are not driven by a concern about trade secrets, but instead by: 1) its false allegation that it was "abused" in a conference call; and 2) its fear that AXP would exercise its contractual right to terminate the contract at the end of 2005 because of EchoMail's slow, problem-riddled product and inferior support service. As

AXP had prepaid EchoMail for all of 2005, EchoMail decided to refuse to perform further and bring these meritless claims to distract from its willful breach.

## STATEMENT OF FACTS

AXP refers the Court to the Declarations of Colleen Dechon, Angela Ramsammy, Greg Daniel, and Reena Panikar in Opposition to the Motion for a Preliminary Injunction for the relevant factual background.

## ARGUMENT

## ECHOMAIL CANNOT ESTABLISH ANY OF THE ELEMENTS REQUIRED TO OBTAIN PRELIMINARY INJUNCTIVE RELIEF

A preliminary injunction shall only be granted it the plaintiff can show: (1) a likelihood of success on the merits; (2) irreparable harm if the injunction is not issued; (3) the balance of the harms falls in its favor; and (4) the injunction will not harm the public interest. *Professional Services, Inc. v. Ricci*, 192 F.3d 1, 3 (1st Cir. 1999). Given the extraordinary relief a preliminary injunction represents, the First Circuit has repeatedly instructed district courts not to grant such relief unless plaintiff has clearly and unequivocally established each of these elements. *See, e.g., Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 163 (1st Cir. 2004). EchoMail cannot establish any of these elements.

**I.   EchoMail is Unlikely To Succeed On the Merits.**

Plaintiff's motion for a preliminary injunction is based on its misappropriation of trade secrets and breach of contract claims. Plaintiff has failed to show a likelihood of success on the merits of either claim.

3

A.     Plaintiff is Unlikely to Succeed on its Misappropriation of Trade Secrets Claim.

To succeed on a claim of misappropriation of trade secrets, a plaintiff must show: 1) the existence of a trade secret; and 2) that the defendant used the trade secret in breach of an agreement, a confidential relationship or duty, or as a result of discovery by improper means. *Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1176 (2d Cir. 1993).[1]  Plaintiff has not established these elements.

1.     Plaintiff Has Not Established the Existence of a Trade Secret.

A trade secret is "any formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Ibid.*  In determining what qualifies as a trade secret, a court may consider: (i) the extent to which the information is known outside of the business; (ii) the extent to which it is known by employees and others involved in the business; (iii) the extent of measures taken by the employer to guard the secrecy of the information; (iv) the value of the information to the employer and to his competitors; (v) the amount of effort and money expended by the employer in developing the information; and (vi) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Id.* at 1176 n.1 (citing *Restatement of Torts,* Sec. 757 cmt. B).

In this case, Plaintiff has not proffered any "formula, pattern, device or compilation of information" necessary to sustain this motion. Indeed, Plaintiff has not even identified what information it allegedly disclosed to AXP during the Review.

---

[1] As Plaintiff acknowledges, the contract between the parties contains a choice of law provision providing for New York law. In any event, if the Court applies Massachusetts law, Plaintiff still is unlikely to succeed on its claim.

4

Plaintiff only states in its moving papers that its "technology, or 'code'" was revealed. Plaintiff's Memo., p. 6; Shiva Aff., ¶8. However, AXP never reviewed any computer software "source code," or any computer code of any kind. See Declaration of Angela Ramsammy at ¶7.

Without identifying with specificity what trade secret was misappropriated by AXP, Plaintiff's motion for a preliminary injunction must be denied. *See, e.g., Julie Research Labs., Inc. v. Select Photographic Eng'g, Inc.*, 998 F.2d 65 (2d Cir. 1993) (vacating preliminary injunction because of failure to identify trade secret); *RF Technologies Corp. v. Applied Microwave Technologies, Inc.*, 369 F.Supp.2d 17, 19 (D. Me. 2005) (denying preliminary injunction because plaintiff failed to carry burden of showing protectable trade secret).

In *American Science and Engineering, Incorporated v. Kelly*, 69 F.Supp. 2d 227, 238-239 (D. Mass. 1999), the plaintiff sued the U.S. Customs Service and a competitor for alleged misappropriation of trade secrets involving the production of x-ray detection equipment. The court denied the preliminary injunction, in part, because the plaintiff did not clearly show the trade secrets that were allegedly misappropriated. The court wrote:

> One major difficulty with [the plaintiff's] theory is its vagueness and lack of specificity. After a thorough review of both the exhibits and the testimony, the Court is still unclear as to exactly what 'trade secrets' were allegedly misappropriated.

*Id.*, at 238-239.

Even if Plaintiff did allege the existence of a trade secret with the requisite specificity, it has failed to show any efforts to protect the information disclosed during the Review. *EarthWeb, Inc. v. Schlack*, 71 F.Supp.2d 299, 314 (S.D.N.Y. 1999) ("The

most important consideration is whether the information was kept secret. This requires that the owner of a trade secret take reasonable measures to protect its secrecy."); *CVD, Inc. v. Raytheon Co.*, 769 F.2d 842(1st Cir. 1985) (requiring reasonable precautions be taken to preserve secrecy in order for trade secret to be protected).

EchoMail voluntarily and without objection disclosed the information to AXP at the Review. Instead of highlighting confidentiality concerns, EchoMail e-mailed a few documents to AXP in anticipation of the Review, a notoriously insecure mode of communication. Ramsammy Decl. at ¶ 5.

EchoMail voluntarily disclosed information to the IBM personnel as well. At no time during the discussion did EchoMail object to the IBM personnel participating in the call. While EchoMail contends that the IBM personnel were not identified as such at the beginning of the call, the IBM personnel were not hiding their identity as the IBM affiliation indisputably was mentioned during the call. To the extent EchoMail was truly concerned about security and knowing who was involved in the Review, it could have inquired into the status of the IBM personnel at the outset.

Finally, as EchoMail's software is subject to several U.S. Patents, all the relevant "proprietary" information is in the public domain and thus not a trade secret. Verified Complaint, ¶56. As patents are public information, fully and thoroughly revealing the invention at issue, they cannot be the subject of a trade secret and eliminate any misappropriation of trade secret claim. 2-8 *Milgrim on Trade Secrets* § 8.02 (2005) ("The inventor of matter eligible for patent protection must elect whether to avail himself of such protection, accepting the attendant obligations, or whether to retain the matter as a secret, relying upon the protection extended to trade secrets by the common law and by

certain statutes."); *American Science and Engineering, Incorporated v. Kelly*, 69 F.Supp.2d 227, 240 (D. Mass. 1999) (holding that information subject to patent necessarily public and thus not trade secret); *Moore v. Marty Gilman, Inc.*, 965 F.Supp. 203, 217 (D. Mass. 1997) (finding that information already in the public domain cannot be a trade secret).

2.  Plaintiff Has Not Shown, or Even Alleged, Use of the Trade Secret

As the cases cited by Plaintiff itself demonstrates, Plaintiff must also show that the trade secret is being used. *Fabkom, Inc. v. R.W. Smith & Associates, Inc.*, Civ. No. 95 Civ. 4552 (MBM), 1996 WL 531873, *9 (S.D.N.Y. Sept 19, 1996) (holding that "the trade secret must be used" to state claim for misappropriation); *Sylmark Holdings Ltd v. Silcone Zone International, Ltd*, 5 Misc.3d 285, 783 N.Y.S.2d 758, 2004 N.Y. Slip Op. 24288 (2004) (stating requirement "that the defendant is using the trade secret" for misappropriation claim).

AXP is not using any of the information disclosed to it during the Review. Ramsammy Decl. at ¶ 13. Plaintiff has not even alleged to the contrary. At most, EchoMail raises a vague and completely unsupported allegation regarding "plans" to compete with EchoMail. Shiva Aff., ¶12. AXP denies this. Declaration of Colleen Dechon at ¶ 18. In any event, EchoMail has not come close to establishing its misappropriation claim or demonstrating the type of immediate harm to support a preliminary injunction.

3.  Plaintiff Has Not Shown Discovery By Improper Means.

Finally, Plaintiff has not shown that AXP received any information through improper means. Indeed, as shown above, Plaintiff released the information to AXP

voluntarily. Plaintiff does not allege that AXP obtained any information beyond what EchoMail voluntarily provided to AXP.

### B. Plaintiff is Unlikely to Succeed on its Breach of Contract Claim.

The Stand Alone Agreement for Consulting Services between AXP and Echomail provides that the parties shall preserve certain information as confidential. AXP has complied with this agreement. The IBM personnel were acting on behalf of AXP. In any event, EchoMail itself disclosed the information at issue to the IBM personnel. EchoMail did not object to their participation in the Review at any point while the Review was being conducted. EchoMail was fully aware that IBM provided consulting services for AXP, and never raised any objection to their involvement until weeks after the Review and shortly before filing suit. Ramsammy Dec. at ¶¶ 8-12; Dechon Decl. at ¶ 11. Finally, under the agreement, information that is publicly available is not considered confidential, and this would include information relating to EchoMail's patents.

### II. Plaintiff Has Not Carried Its Burden of Showing Irreparable Harm.

Plaintiff has not shown that it will be irreparably harmed by the denial of the motion. "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004). "[A] preliminary injunction is not warranted by a tenuous or overly speculative forecast of anticipated harm." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996), citing *Narragansett Indian Tribe*, 934 F.2d at 6-7 and *Public Serv. Co. v. Town of W. Newbury*, 835 F.2d 380, 383 (1st Cir. 1987). The threat of irreparable harm must be "real and immediate." *Biogen IDEC MA Inc. v. Trustees of Columbia*

*University*, 332 F.Supp.2d 286, 296 (D. Mass. 2004), citing *Auto. Radio Mfg. Co. v. Ford Motor Co.*, 390 F.2d 113, 116 (1st Cir. 1968).

It this case, Plaintiff is not in danger of irreparable harm because it never revealed any trade secrets or other proprietary information. Ramsammy Decl. at ¶¶ 6-7. In any event, AXP has no intention of using any information from EchoMail. From a business perspective, AXP is involved with credit cards and travel, not developing or commercializing e-mail related software. AXP has no plans to develop its own e-mail response product, or any software related thereto. To the contrary, AXP is presently in a RFP process to find a new e-mail response vendor in light of EchoMail's failure to perform. Dechon Decl. at ¶¶ 17-18.

This case is sharply distinguished from *Touchpoint Solutions, Inc., v. Eastman Kodak Co*, 345 F. Supp.2d 23 (D. Mass. 2004). Unlike the *Touchpoint* case, AXP in this case does not have any plans to develop its own e-mail response product; never hired, or otherwise negotiated, with a third party to build such a system; never learned of any specific technical information necessary to build its own version of Plaintiff's system, including its source code; and never forwarded any such information to any third party developer. Indeed, unlike in *Touchpoint*, AXP is moving away from Plaintiff's product, and not seeking to adopt or develop it.

**III.   Balancing of the Harms and the Public Interest Favors Denial of the Injunction.**

Injunctive relief is an extraordinary remedy and should only be granted upon an extraordinary showing. Plaintiff unilaterally and maliciously terminated its services to AXP. Dechon Decl. at ¶¶ 10-14. Currently, most of the AXP business units previously

serviced by EchoMail lack the ability to receive and process inbound e-mails due to EchoMail's breach. Dechon Decl. at ¶ 16. Such conduct is intolerable.

In the event a preliminary injunction is issued against AXP, vendors of other e-mail response products may withdraw from participation in the current RFP and not offer to provide AXP with their services for fear of becoming entangled in the litigation. As a company based on its relationship with its customers, AXP cannot proceed without an e-mail response product for its businesses. The harm done to AXP could be extraordinary.

Moreover, if plaintiff were granted a preliminary injunction on these facts, it would severely limit AXP's way of doing business. It would limit its ability to conduct reviews of products it is considering adopting or to evaluate thoroughly competing vendors products and the underlying security for AXP customers related to those products.

## CONCLUSION

For all the forgoing reasons, AXP requests that this Court deny EchoMail's motion for a preliminary injunction in its entirety, and award AXP any further relief that the Court deems appropriate and just.

Respectfully submitted,

_____
John F. Farraher
Evan Georgopoulos
GREENBERG TRAURIG LLP
One International Place
Boston, Massachusetts 02110
(617) 310-6000

-and-

Louis Smith
Clark P. Russell
GREENBERG TRAURIG LLP
200 Campus Drive
Florham Park, New Jersey 07832
(973) 360-7900

## CONCLUSION

For all the forgoing reasons, AXP requests that this Court deny EchoMail's motion for a preliminary injunction in its entirety, and award AXP any further relief that the Court deems appropriate and just.

Respectfully submitted,

AMERICAN EXPRESS COMPANY

By its counsel

John F. Farraher, Jr. (BBO#568194)
GREENBERG TRAURIG LLP
One International Place, 20th Floor
Boston, Massachusetts 02110
(617) 310-6000

-and-

Louis Smith
Clark P. Russell
GREENBERG TRAURIG LLP
200 Campus Drive
Florham Park, New Jersey 07832
(973) 360-7900

DATED: June 28, 2005

11