UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ECHOMAIL, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN EXPRESS CO. and IBM CORP., <br><br> Defendants. | CIVIL ACTION NO. 05-11318 |

DECLARATION OF ANGELA RAMSAMMY
IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

ANGELA RAMSAMMY, hereby declares as follows:

1. I am a Lead Programmer Analyst for American Express Travel Related Services Company, Inc. ("AXP"). I served as the technical lead for AXP in connection with the relationship with EchoMail, Inc. ("EchoMail"). As such, I have personal knowledge of the facts set forth herein.

2. During the time it was performing, EchoMail would store, categorize, and respond to AXP's customers' e-mails. EchoMail at all times hosted the technology related to its product at its own facility. Thus, all the hardware and software related to EchoMail's product was located at EchoMail's facility. EchoMail's software was never installed within AXP.

3. AXP, like most other large companies, will not adopt any new product without an evaluation (called a Technical Due Care Review ("Review")) of the technology. Additionally, AXP requires that a Review be conducted in connection with a product upgrade if the existing vendor considers an upgrade to be significant, or if the upgrade has new features or changes that enhance security, performance, or functionality.

4. EchoMail advised AXP that it intended to launch a major upgrade to its EchoMail Suite Software, from Version 7.3 to Version 8.1. The new version included many new features. As a result, a Review was triggered.

5. In connection with the Review, EchoMail responded to a Technology Evaluation Questionnaire ("TEQ") and e-mailed to AXP three one-page, high-level conceptual diagrams. Thereafter, on May 4 and 5, 2005, the Review was conducted at EchoMail's offices. I personally attended the Review.

6. The Review involved a series of discussions with EchoMail personnel regarding the additional features of the new version of the software, including its security features. The discussions were on a conceptual level only.

7. At no time during the Review, or at any other time, did anyone from AXP review any computer code of any kind (machine or source code) in electronic, printed, or any other format. Nor did AXP review any software routines or algorithms. AXP did not receive copies of any documents or any other materials during the Review.

8. During the morning on the first day of the Review, IBM consultants Steven Gibbons and Todd Seager dialed in to participate in a discussion via telephone.

9. IBM provides consulting services for AXP to assist in the management and operations of AXP's various computer networks and web sites. The work performed by the IBM consultants such as Messrs. Gibbons and Seager is performed exclusively for the benefit of AXP, and is subject to non-disclosure obligations.

10. EchoMail had been a vendor of AXP since 1999, and was aware of the consulting relationship between AXP and IBM.

11. Furthermore, in responding to the TEQ, EchoMail represented to AXP that EchoMail has "technology and marketing partnerships with IBM USA."

12. EchoMail did not object to the presence of IBM personnel during the call, despite the fact that during the call an IBM participant clearly identified himself as such. Moreover, EchoMail permitted the Review to continue the remainder of that day and for a following day.

13. AXP is not using any EchoMail technology. It would not be technically feasible to recreate EchoMail's product based on the high-level, conceptual information that EchoMail provided to AXP.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 27, 2005.

*Angela Ramsammy*
ANGELA RAMSAMMY

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on 6/28/05