UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ECHOMAIL, INC.,                )
                               )
          Plaintiff,           )
                               )
v.                             )    Civil Action No. 05-11318-NMG
                               )
AMERICAN EXPRESS CO.           )
and IBM CORP.,                 )
                               )
          Defendants.          )
                               )

PLAINTIFF ECHOMAIL INC.'S REPLY TO THE
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION

In opposition to EchoMail's motion for a preliminary injunction the defendants offer inapposite legal theories and demonstrably false, misleading and contradictory declarations. This reply memorandum is necessary to address the defendants' legal arguments and call the Court's attention to the factual inaccuracies in the defendants' submissions. EchoMail calls the Court's attention to the First Supplemental Affidavit of V.A. Shiva Ayyadurai ("Shiva Supp. Aff.") and the Affidavits of Mathew "Sonu" Abraham and Robert Zierten.

I.   ECHOMAIL CANNOT DISCLOSE ITS TRADE SECRETS IN
     PUBLIC FILINGS AND THE LAW DOES NOT REQUIRE IT

Apparently the defendants believe that the same information EchoMail claims is a protectable trade secret must be fully disclosed in its papers seeking an injunction. See AmEx's memo at pp. 4-5; IBM's memo pp. 7-8. The law does not require this. If the information were publicly disclosed, these defendants would be the first to claim that EchoMail had failed to protect its confidential and proprietary information. The law recognizes that the details of trade secrets cannot be spelled out in public filings. See Data General Corp. v. Grumman Sys. Support

Corp., 825 F. Supp. 340, 358 (D. Mass. 1993)(stating "[o]ne who seeks to protect his trade secrets from wrongful use or disclosure does not have to spell out the details of the trade secret... To so require would mean that the complainant would have to destroy the very thing for which he sought protection by making public the secret itself"), quoting Diodes, Inc. v. Franzen, Inc., 260 Cal. App.2nd 244, 67 Cal. Rptr. 19, 24 (1966).

In any event, in order to put a finer point on the confidential and proprietary technology at issue, Shiva's supplemental affidavit identifies the confidential business practices revealed to IBM and AmEx duing the architecture review. Shiva Supp. Aff. para. 2. As fully set forth in its memorandum of law in support of the preliminary injunction at section A(1), such confidential and proprietary technology is clearly entitled to protection as a trade secret under the law.

Moreover, despite their desperate attempts to minimize their wrongful conduct, the defendants know exactly what information they received and should not be heard to argue that they are in the dark as to what information EchoMail wants to protect. After all, AmEx contracted with EchoMail and specifically agreed to keep EchoMail's information confidential. Moreover, documents specifically related to the architecture review state that the information provided by EchoMail is confidential and proprietary and that AmEx will protect the information. Shiva Supp. Aff. para. 6(b).

II. ECHOMAIL'S UNPATENTED TECHNOLOGY IS A TRADE SECRET AND MUST BE PROTECTED

The defendants argue that EchoMail cannot demonstrate a substantial likelihood of success on the merits of its unfair competition and misappropriation of trade secrets claims because it obtained patents. AmEx memo at 6-7; IBM memo at pp. 8-9. This legal theory is not relevant to the facts here. EchoMail does not make unfair competition and misappropriation claims with respect to its patents, as its Verified Complaint makes perfectly clear. Its unfair

competition and misappropriation claims cover its unpatented confidential and proprietary technology, which includes technology related to its business practices. It is these same business practices technologies that the defendants covet, and which one of the defendants (IBM), aided by AmEx, surreptitiously obtained during the architecture review. As the defendants well know, approximately five minutes of the 16 hour architecture review were devoted to identification of EchoMail's patents. The remainder—approximately 15 hours and 55 minutes—was devoted to EchoMail's unpatented confidential and proprietary technology. With respect to the law, "the existence of a patent does not affect the existence of or protection to be afforded to trade secrets or other confidential information not required to be disclosed in the patent." Modern Controls, Inc. v. Andreadkis, 578 F.2d 1264, 1269 n.10 (8th Cir. 1978)(citations omitted)(granting an injunction).

### III. THE DEFENDANTS' DECLARATIONS ARE FALSE, MISLEADING AND CONTRADICTORY

The defendants' declarations are false, misleading and contradictory. The deficiencies in the defendants' declarations are fully set forth in the affidavits filed herewith.

In general, the defendants' affidavits downplay the significance of the architecture review by claiming that the review was "conceptual... only." Nothing could be further from the truth. The Technical Evaluation Questionnaire which preceded the architectural review runs 30 pages and proclaims that the information in the questionnaire (and, therefore, the architecture review) is confidential and proprietary. This directly contradicts the position AmEx has taken with the Court. Moreover, the review was not limited to version 8.1, as the questionnaire makes clear. Indeed, the review was focused on EchoMail's confidential and proprietary technology, including its business practices.

The defendants also would have this Court believe that EchoMail's product had

3

"numerous problems" which lead to the architecture review. This is not so. The problem that existed was created entirely by Ms. Panikar's AmEx operation in India—which the defendants know. In short, AmEx was using untrained employees who were misusing the product. AmEx failed to provide the proper training to these employees in India, thereby causing the slowdown.

The defendants claim that EchoMail has not alleged use of the information which they misappropriated. First, EchoMail has alleged use. AmEx caused IBM to receive the information, in violation of EchoMail's agreement with AmEx. IBM and AmEx compete with EchoMail in the email management business. Second, this is a text book case in which the facts demonstrate that use should be presumed. And, third, it is reasonably inferable from the declaration of one of the IBM employees that the information gleaned from EchoMail is being and will be used by AmEx and IBM in evaluating EchoMail's competitors. In fact, the defendants' knowledge of EchoMail's trade secrets and proprietary information places them in a position whereby they can help to improve EchoMail's competitors' products, and potentially IBM's products as well, since IBM is also in the email management business, all to the serious detriment of EchoMail.

Since the defendants have no right to the use or continued possession of EchoMail's trade secrets and proprietary information, they have no reasonable basis to oppose injunctive relief. For the reasons stated in this Reply and the other papers on file, EchoMail respectfully submits that it is entitled to the injunctive relief sought.

> Respectfully submitted,
>
> ECHOMAIL, INC.,
>
> By its attorneys,
>
> /s/ Alan D. Rose
>
> Alan D. Rose (BBO#427280)
> Alan D. Rose, Jr.(BBO#628871)
> ROSE & ASSOCIATES
> 29 Commonwealth Avenue
> Boston, Massachusetts 02116
> 617-536-0040

June 29, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party ~~by mail~~/by hand.

Date: 6.29.2005   /s/ Alan D. Rose

5