UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ECHOMAIL, INC.,<br><br>                              Plaintiff,<br><br>vs.<br><br>AMERICAN EXPRESS, CO. and<br>INTERNATIONAL BUSINESS MACHINES,<br>CORP.,<br><br>                              Defendants. | Civil Action No. 05-11318-NMG<br><br>ANSWER TO COMPLAINT |

Defendant International Business Machines, Corp. ("IBM"), by its undersigned attorneys for its Answer to the Complaint of EchoMail, Inc. ("EchoMail") herein, on personal knowledge as to its own actions and upon information and belief as to the actions of others, states as follows:

## INTRODUCTION

1. Denies the averments of paragraph 1.

2. Denies the averments of paragraph 2, except admits that EchoMail purports to bring a complaint for misappropriation of trade secrets, unfair competition, unfair and deceptive acts and practices, breach of contract, breach of the covenant of good faith and fair dealing, and intentional interference with contractual relations.

## PARTIES AND JURISDICTION

3. IBM admits that EchoMail, a Delaware Corporation with its headquarters in Cambridge, Massachusetts is a provider of electronic mail management services, software and hardware.

4. IBM admits that Defendant American Express is a New York Corporation with its principal place of business in New York City and is engaged in the financial services business. IBM further states that it is lacking information sufficient to form a belief as to the truth of the remainder of the averments of paragraph 4.

5. IBM admits that IBM is a New York Corporation with its principal place of business in Armonk, New York and is a world wide information technology corporation. The remainders of the averments of paragraph 5 are legal conclusions for which no response is required.

## FACTS

6. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 6.

7. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 7.

8. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 8.

9. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 9.

10. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 10.

11. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 11.

12. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 12.

[[NYLIT:2335548v2:4144D:07/11/05--05:05 p]]

13. Denies the averments of paragraph 13, except admits that EchoMail provides software and hardware services relating to email management to its customers.

14. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 14.

15. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 15.

16. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 16.

17. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 17.

18. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 18.

19. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 19.

20. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 20.

21. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 21.

22. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 22.

23. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 23.

24. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 24.

25. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 25.

26. Denies the averments of paragraph 26.

27. At this time, despite a diligent inquiry, IBM is unable to admit or deny the averments of paragraph 27.

28. At this time, despite a diligent inquiry, IBM is unable to admit or deny the averments of paragraph 28.

29. IBM denies the averments of paragraph 29, except admits that EchoMail and IBM entered into a "Confidential Disclosure Agreement" ("CDA") in April 2002, attached along with supplements hereto as Exhibit A. Pursuant to a Supplement for Disclosure to that CDA, IBM, at EchoMail's request, was given access to the source code and documentation for EchoMail Direct for the purpose of evaluating the cost of having IBM convert that software to a JAVA based application. Following IBM's evaluation of the EchoMail source code, IBM made a proposal to perform the conversion work requested by EchoMail. At that time, EchoMail declined to proceed with the project. Following that decision by EchoMail, IBM destroyed the copies of the EchoMail source code and documentation it had been given by EchoMail.

30. At this time, despite a diligent inquiry, IBM is unable to admit or deny the averments of paragraph 30.

31. Denies the averments of paragraph 31.

4

32. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 32.

33. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 33.

34. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 34.

35. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 35.

36. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 36.

37. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 37.

38. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 38.

39. Denies the averments of paragraph 39.

40. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 40.

41. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 41, except admits an architecture review occurred on May 4 and 5, 2005.

42. Denies the averments of paragraph 42.

43. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 43.

44.  States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 44, except states that the participation of IBM personnel in the technical review was announced to EchoMail by Stephen Gibbons, an IBM employee.  Following that announcement, the technical review continued with Mr. Gibbon's participation.  EchoMail voiced no objection to IBM being on the call and did not seek to designate the subject matter of the call as confidential under the CDA between IBM and EchoMail.

45.  Denies the allegations of paragraph 45.

46.  States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 46.

47.  States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 47.

48.  States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 48.

49.  Denies the averments of paragraph 49.

50.  Denies averments of paragraph 50, except lacks information sufficient to form a belief regarding EchoMail's invoices.

51.  States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 51.

52.  Denies the averments of paragraph 52.

53.  States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 53, except admits EchoMail has entered into a

"Confidential Disclosure Agreement" with IBM, attached along with supplements hereto as Exhibit A.

54. Denies the averments of paragraph 54, except admits AmEx and EchoMail entered into a confidentiality agreement.

55. States that it is lacking information sufficient to form a belief as to the truth of the averments of paragraph 55.

56. Denies the averments of paragraph 56, except admits EchoMail has obtained patents on December 23, 2003 and April 6, 2004.

57. Admits that IBM and American Express have entered into an outsourcing contract pursuant to which IBM provides certain products and services and denies the remainder of the averments of paragraph 57.

58. Denies the averments of paragraph 58.

59. Denies the averments of paragraph 59.

## CLAIMS

### COUNT I

<u>Misappropriation of Trade Secrets in Violation of
Mass. G.L. c. 93, § 42 and New York Law</u>
(Against Both Defendants)

60. Includes its responses to paragraphs 1 through 59.

61. Denies the averments of paragraph 61.

62. Denies the averments of paragraph 62.

63. Denies the averments of paragraph 63.

64. Denies the averments of paragraph 64.

65. Denies the averments of paragraph 65.

7

66. Denies the averments of paragraph 66.

## COUNT II

### Unfair Competition
(Against Both Defendants)

67. Includes its responses to paragraphs 1 through 59.

68. Denies the averments of paragraph 68.

69. Denies the averments of paragraph 69.

## COUNT III

### Unfair and Deceptive Practices in Violation of G.L. c. 93A, § 11
(Against Both Defendants)

70. Includes its responses to paragraphs 1 through 59.

71. Denies the averments of paragraph 71.

72. Denies the averments of paragraph 72.

## COUNT IV

### Breach of Contract
(Against AmEx)

73. States no response required as paragraph 73 is not asserted against IBM.

74. States no response required as paragraph 74 is not asserted against IBM.

75. States no response required as paragraph 75 is not asserted against IBM.

## COUNT V

### Breach of Covenant of Good Faith and Fair Dealing
(Against AmEx)

[[NYLIT:2335548v2:4144D:07/11/05--05:05 p]]

76. States no response required as paragraph 76 is not asserted against IBM.

77. States no response required as paragraph 77 is not asserted against IBM.

78. States no response required as paragraph 78 is not asserted against IBM.

## COUNT VI

### Interference with Contractual Relations
### (Against AmEx)

79. States no response required as paragraph 79 is not asserted against IBM.

80. States no response required as paragraph 80 is not asserted against IBM.

81. States no response required as paragraph 81 is not asserted against IBM.

82. States no response required as paragraph 82 is not asserted against IBM.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

83. Plaintiff fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

84. Plaintiff's claims are barred because IBM has not engaged in any unlawful or unfair acts or practices.

9

### Third Affirmative Defense

85.     Plaintiff's claims are barred because they are based on ideas, processes, facts, information and/or materials that are not protected trade secrets.

### Fourth Affirmative Defense

86.     Plaintiff has suffered no injury, no injury-in-fact, no damages and/or is not entitled to the relief it seeks.

### Fifth Affirmative Defense

87.     Plaintiff's claims are barred because IBM has not used the allegedly disclosed information.

### Sixth Affirmative Defense

88.     Plaintiff's claims are barred by the doctrine of laches, waiver and estoppel.

### Seventh Affirmative Defense

89.     Plaintiff's claims are barred by the doctrine of unclean hands.

### Eighth Affirmative Defense

90.     Plaintiff's claims are barred by the doctrine of estoppel.

### Ninth Affirmative Defense

91.     Plaintiff's claims are barred by the contractual rights provisions agreed to by the parties in their Confidential Disclosure Agreement, dated April 10, 2002.

### Tenth Affirmative Defense

92.     Plaintiff's claims under Mass. G.L. c 93A § 11 (Count III) are barred to the extent they did not take place in Massachusetts.

IBM CORPORATION,

By its attorneys,


  /s/ Stephen D. Poss
Stephen D. Poss, P.C. (BBO # 551760)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
(617) 570-1000

and

Rowan D. Wilson, Esq.
Thomas G. Rafferty, Esq.
(both admitted *pro hac vice*)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019-7475
(212) 474-1000

Dated:  July 11, 2005

# EXHIBIT A

## CONFIDENTIAL DISCLOSURE AGREEMENT

Agreement # TOR02046

This Agreement will provide protection for information to be exchanged between us which we do not wish to become public ("Information") while maintaining our ability to conduct our respective business activities. Each of us agrees that the following terms will apply when one of us or its Affiliate ("Discloser") discloses information to the other or its Affiliate ("Recipient") under this Agreement. "Affiliates" means entities that control, are controlled by, or are under common control with a party to this Agreement.

**1.0 DISCLOSURE:** Each time Discloser wishes to disclose specific Information to Recipient, or wishes to engage in multiple disclosures relating to a specific subject matter, Discloser will issue a supplement to this Agreement ("Supplement") before disclosure. The Supplement will contain initial and final disclosure dates, a non-confidential description of the Information to be disclosed and any additional or different terms and conditions. The Supplement must be signed by the Discloser and the Recipient. Information may be disclosed by: (i) presentation; (ii) delivery; (iii) authorized access, such as to a data base; or (iv) any other express means. Information must be identified as confidential orally or in writing at the time of disclosure, and all materials containing Information must have a restrictive marking. The Discloser will not disclose any Information not described in a signed Supplement or which Discloser does not have the right to disclose to the Recipient. For two (2) years after the date of disclosure, the Recipient will use the same care and discretion to avoid disclosure of the Discloser's Information as the Recipient uses with its own similar information which it does not wish to disclose. Subject to this obligation, the Recipient may use Discloser's Information for any purpose.

**2.0 EXCEPTIONS:** The Recipient may disclose Discloser's Information to: (i) its employees and contractors, and employees and contractors of an Affiliate, who have a need to know; and (ii) any other party with the Discloser's prior written consent. Upon request of the Recipient, the Discloser may make disclosures directly to such parties on behalf of the Recipient. Prior to any such disclosure or such request by Recipient, the Recipient must have an appropriate agreement with any such party sufficient to require the party to treat Information in accordance with this Agreement. The Recipient may disclose Information to the extent required by law; but must give the Discloser reasonable prior notice to allow the Discloser a reasonable opportunity to obtain a protective order. Notwithstanding the foregoing, no obligation will apply to Information that is: (i) already rightfully in the Recipient's possession or rightfully received by the Recipient without a nondisclosure obligation; (ii) developed independently by the Recipient; (iii) publicly available when received, or thereafter becomes publicly available through no fault of the Recipient; (iv) disclosed by the Discloser without a signed Supplement as required by Section 1; or (v) disclosed by Discloser to a third party without a nondisclosure obligation. Inherent disclosure of ideas, concepts, know-how or techniques contained in Discloser's Information by Recipient in the use, distribution, or marketing of any product or service shall not be deemed to be in violation of Recipient's obligations under Section 1.0 above.

**3.0 DISCLAIMERS:** THE DISCLOSER PROVIDES INFORMATION SOLELY ON AN "AS IS" BASIS. Neither this Agreement, nor any disclosure of information hereunder, in any way: (i) grants to either of us or our Affiliates any right or license under any copyright, patent, mask work or trademark now or hereafter owned or controlled by the other; (ii) obligates either of us or our Affiliates to disclose or receive any information, perform any work, enter into any license, business engagement or other agreement; (iii) limits either of us or our Affiliates from developing, manufacturing or marketing products or services which may be competitive with those of the other; (iv) limits either of us or our Affiliates from assigning or reassigning its employees in any way; (v) creates any joint relationships or authorizes either of us or our Affiliates to act or speak on behalf of the other; or (vi) limits either of us or our Affiliates from entering into any business relationship with any other parties.

**4.0 GENERAL:** Neither party may assign or otherwise transfer its rights or delegate its duties or obligations under this Agreement without the prior written consent of the other. Any attempt to do so will be void. The Recipient must comply with all applicable government export and import laws and regulations. Only a written agreement signed by both of us can modify this Agreement. Either party may terminate this Agreement by providing one month's written notice to the other. Any provisions of this Agreement which by their nature extend beyond its termination remain in effect until fulfilled and apply to our respective successors and authorized assigns. If there is a conflict between the terms of this Agreement and a Supplement, those of the Supplement will prevail for that disclosure. This Agreement is governed by the laws of the country in which the disclosure occurs, except: (i) in Australia, this Agreement will be governed by the laws of the State or Territory in which the disclosure occurs; (ii) in the United Kingdom, this Agreement will be governed by the laws of England; (iii) in Bulgaria, Croatia, Czech Republic, Hungary, Poland, Romania, Slovakia and Slovenia (collectively, "Central Europe"), this Agreement will be governed by the laws of Austria; (iv) in Estonia, Latvia, and Lithuania, Finnish law will apply; (v) in Canada, the laws of the Province of Ontario govern this Agreement; and (vi) in the United States (including if any part of the disclosure is performed within the United States or if the Information is of United States origin) and Puerto Rico, and People's Republic of China, the laws of the State of New York govern this Agreement. Each party hereby agrees to waive its rights to a jury trial.

This Agreement and its Supplements are the complete and exclusive agreement regarding our disclosures of Information, and replace any prior oral or written communications between us. By signing below for our respective enterprises, each of us agrees to the terms of this Agreement. Once signed, any reproduction of this Agreement made by reliable means (for example, photocopy or facsimile) is considered an original.

| ACCEPTED AND AGREED TO: | ACCEPTED AND AGREED TO: |
|---|---|
| **IBM Canada Ltd.** | **EchoMail, Inc.** |
| 3200 Warden Avenue, Markham, Ontario, Canada L6G 1C7 | 66 Church Street, Cambridge, MA, USA 02138 |
| Signature: _[signature]_ | Signature: _[signature]_ |
| Printed Name: R. FULLER | Printed Name: V.A. SHIVA AYYADURAI |
| Title: CONTRACT ADMINISTRATION | Title: PRESIDENT / CEO |
| Date: April 10, 2002 | Date: APRIL 11, 2002 |

EchoMail_CDA_2002-04-10a.lwp

EchoMail Inc;                  617 354 8699;           Apr-11-02 12:28PM;           Page 2/3
11/2002 11:22 FAX 905 413 2430      IBM                                              @003

## SUPPLEMENT FOR DISCLOSURE   # FF1

With respect to the Information identified below, the terms and conditions in Confidential Disclosure Agreement # TOR02046 ("referenced Agreement"), as modified by any terms and conditions identified below, will apply to disclosures hereunder:

Discloser:  ___Yes___ IBM     ___Yes___ You

Initial disclosure date:  April 11, 2002          Final disclosure date: July 30, 2002

IBM's Point of Contact:  Vinny Nagpal          905-413-4027         vnagpal@ca.ibm.com
                          Name                 Telephone #           e-mail

Your Point of Contact:   Alisha Simmons        627-354-8585 x 245   alisha.simmons@echomail.com
                          Name                 Telephone #           e-mail

Non-confidential description of Information to be disclosed:

By IBM: Business plans and architectural overview of an unannounced IBM WebSphere product

By EchoMail: Business plans and application software that may be hosted using an unannounced IBM product

Additional or different terms and conditions (if any):

The final sentence of section 2.0 in the referenced Agreement shall not apply to IBM's Information disclosed under this Supplement; accordingly there is no exception for inherent disclosure of IBM's Information.

This Supplement and the referenced Agreement are the complete and exclusive Agreement regarding disclosures hereunder.

ACCEPTED AND AGREED TO:                        ACCEPTED AND AGREED TO:
IBM Canada Ltd.                                EchoMail, Inc.
8200 Warden Avenue, Markham, Ontario, Canada L6G 1C7    66 Church Street, Cambridge, MA, USA 02138

Signature:  _[signature]_                       Signature: _[signature]_

Printed Name: _R. Fuller_                       Printed Name: _V.A. SHIVA AYYADURAI_

Title: _Contract Administrator_                 Title: _PRESIDENT / CEO_

Date: _APRIL 10, 2002_                          Date: _APRIL 11, 2002_

EchoMail_CDA_2002-04-10a.wp

2005-07-07 05:31 Case 1:05-cv-11318-NMG USRTPL42 Document 27-2 919-543-0984>> Filed 07/11/2005 IBM Corporation Page 4 of 4 P 10/18
Sent By: EchoMail Inc; 617 354 8899; Jul-23-02 4:56PM; Page 2

JUL 23 '02 15:23 FR 9195431119 TO 91 3548899 P.02/04

## Confidential Disclosure Agreement
### Supplement for Disclosure

Referenced Agreement (CDA) # 4902860743
Old Contract # TOR8246
Supplement to CDA #4902860744

With respect to the information identified below, the terms and conditions in the referenced Agreement, as modified by any terms and conditions identified below, will apply to disclosures hereunder:

Discloser: ____ IBM   _X_ EchoMail, Inc

Initial disclosure date: The Execution Date by the Last Party

Final disclosure date: 12/31/2002

IBM Point of Contact: Terry Finch    919-303-7195    terryfin@us.ibm.com
                      Name           Telephone #     e-mail

EchoMail Point of Contact: Hariharan Subramanian   617-354-8585   hari@echomail.com
                          Name                    Telephone #    e-mail

Non-confidential description of information to be disclosed:

EchoMail may disclose information regarding EchoMail Direct (EMD) application e.g., uses, terms, architecture diagrams, source code, technical information, future product plans, and documentation.

Additional or different terms and conditions (if any):

None.

This Supplement and the referenced agreement are the complete and exclusive Agreement regarding disclosures hereunder.

ACCEPTED AND AGREED TO:                        ACCEPTED AND AGREED TO:
IBM                                            EchoMail, Inc
By: _[signature]_ 23 July 2002                 By: _[signature]_ July 28, 2002
Signature        Date                          Signature              Date
Kimble McEachern                               SHIVA AYYADURAI
Printed Name                                   Printed Name
Global Customer Solution and General Procurement    CEO
Title & Organization                           Title & Organization

Address:                                       Address:
3039 Cornwallis Road                           701 Concord Ave.
Research Triangle Park, NC 27709               Cambridge, MA 02138
USA                                            USA

Form Title: Supplement for Disclosure          1 of 1                  Form Release: 8/98
Form Owner: Global Procurement (procure@us.ibm.com)                    Revision: 5/00