UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ECHOMAIL, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN EXPRESS, CO. and INTERNATIONAL BUSINESS MACHINES, CORP., <br><br> Defendants. | Civil Action No. 05-11318-NMG |

## JOINT STATEMENT

In response to this Court's Order of June 30, 2005, EchoMail, Inc., American Express Co., and International Business Machines Corporation ("IBM") hereby submit the following Joint Statement:

### STATEMENT OF ECHOMAIL, INC.

In response to the Court's June 30, 2005 Order, EchoMail and IBM came to terms on a Confidential Disclosure Agreement which is attached hereto as Exhibit A. However, EchoMail and AmEx were unable to reach agreement. On Wednesday, July 6, 2005, EchoMail's counsel submitted to counsel for the defendants a draft Confidentiality and Nondisclosure Agreement. (Exhibit B). Neither IBM nor AmEx proposed changes to this draft. Rather, on Monday, July 11, 2005, AmEx and IBM each submitted a draft agreement for EchoMail's consideration. AmEx's draft agreement (Exhibit C) is unacceptable to EchoMail because it merely refers back to the earlier July 9, 1999 agreement and does not contain provisions concerning what information is confidential (specifically the information provided at the architecture review on

May 4 and 5, 2005), or define how that information is protected from use or disclosure. AmEx was unwilling to consider provisions such as those set forth in paragraphs 1-5 of EchoMail's draft agreement (Exhibit B) which defined the confidential information and protected the information from use or disclosure. EchoMail believes that AmEx's conduct further demonstrates AmEx's intention to use EchoMail's confidential and proprietary information and requires judicial intervention in the form of an injunction. IBM's draft agreement provided the framework for the final agreement (Exhibit A) between IBM and EchoMail.

### STATEMENT OF AMERICAN EXPRESS, CO.

The Stand Alone Agreement for Consulting Services between American Express Travel Related Services Company, Inc. ("AXP") and EchoMail, Inc. ("EchoMail") (as amended and supplemented, "Stand Alone Agreement") contains a provision restricting the use of confidential information. Under the Stand Alone Agreement, information is not considered confidential if it is "(i) already known to the receiving party free of any restriction at the time it is obtained from the other party; (ii) subsequently learned from an independent third party free of any restriction and without breach of this Agreement; (iii) is or becomes publicly available through no wrongful act of either party; (iv) is independently developed by one party without reference to any Confidential Information of the other." Despite that language, and in response to the Court's Order dated June 30, 2005 ("Order"), AXP offered to enter into an agreement pursuant to which all information disclosed by EchoMail to AXP during the Technical Due Care Review (the so-called "Architectural Review") on May 4 and 5, 2005, would be considered confidential under the Stand Alone Agreement. A copy of that proposed agreement is attached hereto as Exhibit C.

EchoMail rejected AXP's offer. EchoMail insisted that the agreement include numerous provisions from a proposed agreement that EchoMail circulated previously, including those

- 3 -

addressing the information disclosed at the Review and the use and dissemination of that information. However, AXP offered to consider as confidential under the Stand Alone Agreement all information disclosed at the Review. Moreover, the Stand Alone Agreement already addresses the use and dissemination of confidential information, and thus AXP believes that it is neither appropriate nor necessary to address those areas again.

We understand that EchoMail and IBM have entered into a nondisclosure agreement. Thus, EchoMail now indisputably has agreements in place with both defendants that restrict the disclosure of confidential information. The thrust of EchoMail's preliminary injunction application was that IBM improperly obtained access to confidential information regarding EchoMail. Specifically, the basis of EchoMail's breach of contract claim was its contention that AXP improperly provided IBM with confidential information regarding EchoMail. By entering into an agreement with IBM, any concern that EchoMail may have had has been fully addressed. While EchoMail at the outset fell far short in carrying its burden for a preliminary injunction, in light of its agreements with all defendants, such relief is clearly not warranted at this time. Indeed, in light of EchoMail's decision to enter into an agreement with IBM, the preliminary injunction motion and the underlying claims are effectively moot.

## STATEMENT OF IBM

IBM has reached an agreement with EchoMail regarding the non-disclosure of information disclosed at the Architectural Review on May 4 and 5, 2005. Attached hereto as Exhibit A is a copy of the agreement. This agreement renders moot EchoMail's request for a preliminary injunction against IBM and, in IBM's view, also renders its position as a defendant in this action superfluous and unnecessary.

Respectfully submitted,

ECHOMAIL, INC.

By its attorneys,

/s/ Alan D. Rose, Jr.
Alan D. Rose (BBO # 427280)
Alan D. Rose, Jr. (BBO # 628871)
ROSE & ASSOCIATES
29 Commonwealth Avenue
Boston, Massachusetts 02116
(617) 536-0040


AMERICAN EXPRESS COMPANY,

By its attorneys,

/s/ John F. Farraher, Jr.
John F. Farraher, Jr. (BBO # 568194)
GREENBERG TRAURIG, LLP
One International Place
Boston, MA 02110
(617) 310-6000



/s/ Louis Smith
Louis Smith (admitted *pro hac vice*)
GREENBERG TRAURIG, LLP
200  Campus Drive, PO Box 677
Florham, Park, NJ
(973) 360-7915

                    IBM CORPORATION,

                    By its attorneys,

                    /s/ Stephen D. Poss, P.C.
                    Stephen D. Poss, P.C. (BBO # 551760)
                    GOODWIN PROCTER LLP
                    Exchange Place
                    Boston, MA 02109
                    (617) 570-1000

                    and

                    Rowan D. Wilson, Esq.
                    Thomas G. Rafferty, Esq.
                    (both admitted *pro hac vice*)
                    CRAVATH, SWAINE & MOORE LLP
                    Worldwide Plaza
                    825 Eighth Avenue
                    New York, NY 10019-7475
                    (212) 474-1000

Date: July 12, 2005

LIBA/1565408.1

# EXHIBIT A

[Without Prejudice]

CONFIDENTIAL DISCLOSURE AGREEMENT

This Agreement between International Business Machines Corporation ("Recipient") and EchoMail ("Discloser") is effective as of May 4, 2005 and will provide protection for the information claimed as confidential by EchoMail (the "Information") in EchoMail Inc. v. American Express Company and IBM, Corp., Civ. No. 05-11318, Dist. of Mass. (N.M.G.)(the "Litigation"). Each of us agrees that the following terms will apply to us or our Affiliates with respect to the Information listed in the attached Supplement. "Affiliates" means entities that control, are controlled by, or are under common control with a party to this Agreement. Our mutual objective under this Agreement is to provide protection for confidential information while maintaining our ability to conduct our respective business activities, including IBM's provision of consulting services to AMEX.

1.0 DISCLOSURE: The Information covered by this Agreement is listed in the Supplement to this Agreement ("Supplement") and includes all information disclosed at the May 4-5, 2005 architecture review. The Supplement contains initial and final disclosure dates, and a non-confidential description of the Information disclosed. The Discloser has not disclosed any Information not described in the Supplement or which Discloser does not have the right to disclose to the Recipient. For three (3) years after the date of disclosure, the Recipient will (i) use the same care and discretion to avoid disclosure of the Discloser's Information as the Recipient uses with its own similar information which it does not wish to disclose; and (ii) use the Discloser's information for the purpose for which it was disclosed or otherwise for the benefit of the Discloser. Subject to this obligation, the Recipient may use Discloser's Information for any purpose.

2.0 EXCEPTIONS: The Recipient may disclose Discloser's Information to: (i) its employees and Affiliates who have a need to know; and (ii) any other party with the Discloser's prior written consent. Prior to any such disclosure or such request by Recipient, the Recipient must have an appropriate agreement with any such party sufficient to require the party to treat Information in accordance with this Agreement. The Recipient may disclose Information to the extent require by law; but must give the Discloser reasonable prior notice to allow the Discloser a reasonable opportunity to obtain a protective order. Notwithstanding the foregoing, no obligation will apply to Information that is: (i) already rightfully in the Recipient's possession or rightfully received by the Recipient without a nondisclosure obligation; (ii) developed independently by the Recipient; (iii) publicly available when received, or thereafter becomes publicly available through no fault of the Recipient; (iv) disclosed by the Discloser without a signed Supplement as required by Section 1; or (v) disclosed by Discloser to a third party without a nondisclosure obligation.

3.0    DISCLAIMERS:    THE DISCLOSER PROVIDES INFORMATION SOLELY ON AN 'AS IS' BASIS. Neither this Agreement, nor any disclosure of Information hereunder, in any way: (i) grants to either of us or our Affiliates any right or license under any copyright, patent, mask work or trademark now or hereafter owned or controlled by the other; (ii) obligates either of us or our Affiliates to disclose or receive any Information, perform any work, enter into any license, business engagement or other agreement; (iii) limits either of us or our Affiliates from developing, manufacturing or marketing products or services which may be competitive with those of the other; (iv) limits either of us or our Affiliates from assigning or reassigning its employees in any way; (v) creates any joint relationship or authorizes either of us or our Affiliates to act or speak on behalf of the other; or (vi) limits either of us or our Affiliates from entering into any business relationship with any other parties.

4.0    GENERAL:    Neither party may assign or otherwise transfer its rights or delegate its duties or obligations under this Agreement without the prior written consent of the other. Any attempt to do so will be void. The Recipient must comply with all applicable government export and import laws and regulations. Only a written agreement signed by both of us can modify this Agreement. Any provisions of this Agreement which by their nature extend beyond its termination remain in effect until fulfilled and apply to our respective successors and authorized assigns. If there is a conflict between the terms of this Agreement and a Supplement, those of the Supplement will prevail for that disclosure. This Agreement is governed by the laws of the country in which the disclosure occurs, except: (i) in Australia, this Agreement will be governed by the laws of the State or Territory in which the disclosure occurs; (ii) in the United Kingdom, this Agreement will be governed by the laws of England; (iii) in Bulgaria, Croatia, Czech Republic, Hungary, Poland, Romania, Slovakia and Slovenia (collectively, "Central Europe"), this Agreement will be governed by the laws of Austria; (iv) in Estonia, Latvia and Lithuania, Finnish law will apply; (v) in Canada, the laws of the Province of Ontario govern this Agreement; and (vi) in the United States (including if any part of the disclosure is performed within the United States or if the information is of United States origin) and Puerto Rico, and people's Republic of China, the laws of the State of New York. Each party hereby agrees to waive its rights to a jury trial.

This Agreement and its Supplement do not supercede or replace any other prior agreements that may exist between the parties and shall not be used, in this or any other litigation as evidence proving the existence, nonexistence, continuation or termination of any prior agreement between the parties. By signing below for our respective clients, each of us agrees that our clients have agreed to the terms of this

Agreement. Once signed, any reproduction of this Agreement made by reliable means (for example, photocopy or facsimile) is considered an original.

ACCEPTED AND AGREED TO:
International Business Machines Corp.

by _____
Name: MARK J. RINGES
Title: ASSOCIATE GENERAL COUNSEL, IBM GLOBAL SERVICES

ACCEPTED AND AGREED TO:
EchoMail, Inc.

by _____
Name:
Title:

Agreement. Once signed, any reproduction of this Agreement made by reliable means (for example, photocopy or facsimile) is considered an original.

ACCEPTED AND AGREED TO:
International Business Machines Corp.

by _____
    Name:
    Title:

ACCEPTED AND AGREED TO:
EchoMail, Inc.

by _/s/_ Shiva Ayyadurai _____
    Name: SHIVA AYYADURAI
    Title: PRESIDENT & CEO

SUPPLEMENT FOR DISCLOSURE #PF1

With respect to the information identified below, the terms and conditions of the attached Confidential Disclosure Agreement will apply to disclosures hereunder:

Discloser:   EchoMail

Initial disclosure date:   May 4, 2005     Final disclosure date: May 5, 2005

Non-confidential description of Information disclosed:

By EchoMail: Information to the extent disclosed at the May 4-5, 2005 architecture review to Stephen Gibbons and Todd Seager of IBM's Global Services Division, (or any other IBM employee who may have participated in that review), including, without limitation, (i) EchoMail's business model for generating revenue through email business process management; (ii) EchoMail's long-term business strategy for growth and expansion; (iii) EchoMail's evaluation of the industry and its competitors; (iv) EchoMail's process for hiring employees and training its customers; (v) EchoMail's core technologies and systems architecture; (vi) EchoMail's process flow for managing in-bound and out-bound email; (vii) EchoMail's security practices for data storage and on demand hosting; (viii) EchoMail's methods and procedures for hosting and monitoring on demand services; (ix) EchoMail's operational practices and procedures; and (x) EchoMail's software development processes and procedures.

# EXHIBIT B

CONFIDENTIALITY
AND NONDISCLOSURE AGREEMENT

    EchoMail, Inc., on behalf of itself, and its current and former officers, directors, and employees ("EchoMail"), American Express Company, on behalf of itself, and its current and former officers, directors, and employees ("AmEx"), and IBM Corporation, on behalf of itself, and its current and former officers, directors, and employees ("IBM")(collectively, the "parties"), hereby enter into the following agreement effective as of July ___, 2005:

    WHEREAS, EchoMail and AmEx are parties to an agreement dated July 9, 1999; and

    WHEREAS, IBM and AmEx are parties to an agreement for services dated _____; and

    WHEREAS, employees of EchoMail, AmEx, and IBM attended or participated in an Architecture Review of EchoMail's products on May 4-5, 2005, which was held telephonically and in person at EchoMail's offices in Cambridge, Massachusetts; and

    WHEREAS, AmEx's employees have received information concerning EchoMail; and

    WHEREAS, IBM's employees have received information concerning EchoMail in connection with its agreement to provide services to AmEx; and

    WHEREAS, the parties to this agreement wish to clarify their respective rights, obligations and responsibilities;

    NOW, THEREFORE, the parties hereby agree as follows:

    1.    EchoMail provides technology and services in email business process management including, in relevant part, (a) in-bound email management, (b) out-bound email management, and (c) email storage and compliance management.  During the Architecture Review on May 4 and 5, 2005, the following information was disclosed and reviewed:

        (i)    EchoMail's business model for generating revenue through email business process management;

        (ii)    EchoMail's long-term business strategy for growth and expansion;

        (iii)    EchoMail's evaluation of the industry and its competitors;

        (iv)    EchoMail's process for hiring employees and training its customers;

        (v)    EchoMail's core technologies and systems architecture;

        (vi)    EchoMail's process flow for managing in-bound and out-bound email;

    (vii)    EchoMail's security practices for data storage and on demand hosting;

    (viii)    EchoMail's methods and procedures for hosting and monitoring on demand services;

    (ix)    EchoMail's operational practices and procedures; and

    (x)    EchoMail's software development processes and procedures.

2. AmEx and IBM will not use or disclose information provided by EchoMail to AmEx and/or IBM, including, without limitation, items of information within the categories set forth above at paragraph 1(i) through 1(x).

3. IBM will not use or disclose information provided by AmEx concerning EchoMail, including, without limitation, items of information within the categories set forth above at paragraph 1(i) through 1(x).

4. For purposes of this agreement, the term "use" will mean, among other things, draw upon, rely on, or incorporate the information provided by EchoMail to AmEx and IBM into any product that competes with EchoMail's products. By way of example only, this means that AmEx will not, in the course of discussions with competitors of EchoMail, disclose to such competitors of EchoMail's information concerning EchoMail, and means that AmEx will not do or say anything to cause such competitors to modify their products to incorporate features of EchoMail's products. By way of further example only, this means that IBM, whether for itself, its customers, clients, or partners will not draw upon, rely on, or incorporate the information provided by EchoMail to AmEx or IBM in developing its own email management system or parts thereof, or in providing consulting services to its customers who are engaged in the email management business.

5. For purposes of this agreement, "disclose" means to impart, directly or indirectly, the information or the substance of the information provided by EchoMail to AmEx and/or IBM.

6. For purposes of this agreement "information" means anything tangible or intangible or electronically kept or stored, which constitutes, represents, evidences or records a secret scientific, technical, merchandising, production or management information, design, process, procedure, formula, invention or improvement.

7. The term "information" shall exclude such information which (i) is otherwise independently learned by or known to AmEx or IBM without an obligation of confidence to EchoMail or without breach of this agreement; (ii) becomes publicly available through no breach of this agreement; (iii) is rightfully received by AmEx or IBM from a third party without obligation of confidentiality with respect to such information; or (iv) is independently developed by AmEx or IBM without breach of this or other applicable agreements.

8.  Nothing contained in this agreement will be deemed to affect the provisions contained in the agreement between EchoMail and AmEx dated July 9, 1999, which will remain in effect.

9.  Nothing contained in this agreement will be deemed to preclude the parties hereto from consulting with their attorneys for purposes of the litigation, <u>EchoMail, Inc. v. American Express Company and IBM Corporation</u>, Civil Action No. 05-11318-NMG (D. Mass.).

10.  Nothing contained in this agreement shall limit the obligations imposed upon the parties by law or by prior agreement.

11.  This agreement is to be incorporated into an order of the court, and will remain in effect until further order of the Court.

12.  The parties signing below represent that they have the authority and capacity to enter into this agreement.

EchoMail, Inc.,


_____
By:

Title:


IBM Corporation,


_____
By:

Title:


American Express Company,


_____
By:

Title:

# EXHIBIT C

## AGREEMENT

**WHEREAS** American Express Company ("AXP") and EchoMail, Inc. ("EchoMail") are parties to a Stand Alone Agreement for Consulting Services, with an effective date of July 9, 1999 (as amended and supplemented, the "Stand Alone Agreement"); and

**WHEREAS** a Technical Due Care (or Architecture) Review ("Review") was conducted on May 4 and 5, 2005, telephonically and in person at EchoMail's facility in Cambridge, Massachusetts; and

**WHEREAS** representatives of IBM Corporation ("IBM") participated telephonically in a portion of the Review; and

**WHEREAS** EchoMail filed a lawsuit against AXP and IBM (<u>EchoMail, Inc. v. American Express Company and IBM Corporation,</u> Civil Action No. 05-11318 (NMG), United States District Court, District of Massachusetts) raising claims relating to the Review ("Litigation"); and

**WHEREAS** EchoMail filed a motion seeking a preliminary injunction against AXP and IBM relating to information that EchoMail disclosed during the Review; and

**WHEREAS** the Honorable Nathaniel M. Gorton entered an Order dated June 30, 2005, directing the parties to confer in good faith and attempt to negotiate a nondisclosure agreement with respect to information disclosed during the Review;

**NOW, THEREFORE** the parties hereby agree as follows:

1. AXP and EchoMail shall consider any information relating to EchoMail that was disclosed by EchoMail to AXP during the Review as confidential information under the Stand Alone Agreement.

2. In connection with any information relating to EchoMail that was disclosed to IBM during the Review, IBM shall be bound by the confidentiality provisions of the Stand Alone Agreement. IBM and EchoMail shall consider any information relating to EchoMail that was disclosed to IBM during the Review as confidential information under the Stand Alone Agreement.

3. Nothing in this agreement shall be construed as an admission of liability on the part of AXP or IBM in connection with the claims asserted by EchoMail in the Litigation.

4. This agreement shall become effective upon the signing by an authorized representative of each party, and shall only apply prospectively.

5.  This agreement does not supercede or replace the Stand Alone Agreement or any other prior agreement that may exist between the parties.

EchoMail, Inc.

_____
By:

Title:

Date:

IBM Corporation

_____
By:

Title:

Date:

American Express Company

_____
By:

Title:

Date: