United States District Court
District of Massachusetts

```
_____
                               )
ECHOMAIL, INC.,                )
                               )
       Plaintiff,              )
                               )    Civil Action No.
       v.                      )    05-11318-NMG
                               )
AMERICAN EXPRESS CO., et al.,  )
                               )
       Defendants.             )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

EchoMail is a company which provides web-based software, hardware and services for email management and storage. It has brought claims against American Express Company ("AmEx") and IBM for misappropriation of trade secrets, unfair competition and unfair and deceptive acts and practices, and against AmEx for breach of contract, breach of the covenant of good faith and fair dealing and interference with contractual relations. Before the Court is EchoMail's motion for a preliminary injunction.

I.  **Background**

EchoMail began providing e-mail management services to AmEx in 1999. As part of its business relationship with AmEx, EchoMail agreed to conduct a so-called "Architecture Review" with representatives from AmEx on May 4 and 5, 2005. Its claims in

this action stem primarily from that meeting. EchoMail contends that, without its knowledge, AmEx invited representatives from IBM to participate in the Architecture Review. EchoMail further contends that it disclosed some of its trade secret information during the Architecture Review, information which it would not have disclosed had it known that representatives from IBM were present. It alleges, among other things, that AmEx and IBM misappropriated its trade secrets during the Architecture Review and that AmEx breached its contract with EchoMail by causing EchoMail's trade secret information to be disclosed to IBM.

AmEx and IBM acknowledge that they participated in the Architecture Review but contend that their participation was not wrongful, that the information disclosed does not qualify as trade secret information and that they have not used and do not intend to use any information provided during the Architecture Review, trade secret or otherwise.

EchoMail moved for a preliminary injunction to prevent AmEx and IBM from using or disseminating its trade secrets. After a hearing on the motion for a preliminary injunction, the Court directed the parties to confer, in good faith, in an effort to negotiate mutually satisfactory nondisclosure agreements. EchoMail reached such an agreement with IBM so its request for a preliminary injunction with respect to IBM is moot. On the other hand, EchoMail and AmEx were unable to reach an agreement. The

Court, therefore, addresses the merits of EchoMail's request for a preliminary injunction with respect to AmEx.

## II. Discussion

To merit a preliminary injunction under Fed. R. Civ. P. 65(a), the plaintiff must show 1) a likelihood of success on the merits, 2) irreparable injury, 3) that such injury outweighs any harm to the defendants and 4) that the injunction would not adversely harm public interest.  Lanier Professional Services, Inc. v. Ricci, 192 F.3d 1, 3 (1st Cir. 1999).

As explained below, plaintiff has failed to show that it is likely to be irreparably harmed if the requested injunction does not issue.  Although irreparable injury is presumed if likelihood of success is shown with respect to a claim of misappropriation of trade secrets, plaintiff has not demonstrated such a likelihood of success so the Court will not presume irreparable injury in this case.  Because plaintiff has failed to demonstrate at least one of the four elements required for a preliminary injunction to issue, its motion for injunctive relief will be denied.

### A. Likelihood of Success on the Merits on the Misappropriation of Trade Secrets Claim

To prevail on a misappropriation of trade secrets claim, a plaintiff must show 1) the existence of a trade secret, 2) reasonable steps to preserve secrecy and 3) use of improper means in breach of a confidential relationship to acquire and use the

secret.  Data General Corp. v. Grumman Systems Support Corp., 36 F.3d 1147, 1165 (1st Cir. 1994).  If plaintiff is unlikely to prove all three prerequisites, it is unlikely to succeed on the merits of its claim and a preliminary injunction cannot issue with respect to the misappropriation claim.

The third prong requires a showing that AmEx actually used the trade secret information.  Id. (stating that plaintiff must prove that defendant used improper means to "acquire and use" the information); see also Fabkom, Inc. v. R.W. Smith & Assocs., Inc., 1996 WL 531873 at *8 (S.D.N.Y. 1996) (stating that plaintiff must demonstrate "that the defendant used the trade secret").  During oral argument on the motion for a preliminary injunction, counsel for EchoMail agreed that proof of use is a necessary element of its misappropriation claim.

EchoMail's allegations with respect to AmEx's use of the information are weak, at best, and are insufficient to convince this Court that EchoMail is likely to succeed on the merits of its misappropriation claim.  EchoMail's complaint and memorandum in support of its motion for preliminary injunction allege that the defendants "will improperly use EchoMail's technology and proprietary information in the absence of judicial intervention" but neither pleading includes allegations that either defendant has used the information.  In response to suggestions by defendants and this Court that plaintiff had not alleged or

-4-

demonstrated use, at oral argument and in its reply memorandum EchoMail contended that AmEx used the information by causing IBM to receive the information.  In these circumstances, however, it is doubtful that such a scenario can be considered "use" of the information.  EchoMail has not alleged that AmEx has done anything with the information or has provided it to any third party.  Its assertion that AmEx's invitation to IBM to participate in a meeting in which EchoMail might disclose its trade secret information constituted "use" of the yet-to-be disclosed information is too far-fetched for this Court to accept as having a probability of success.

EchoMail also suggests that the Court should presume or infer use but the single case it cites for that proposition, Fabkom v. R.W. Smith & Assocs., Inc., does not support its contention and, in addition, emanates from a foreign (i.e. Yankee) jurisdiction.  In granting a preliminary injunction in a case involving a misappropriation of trade secrets claim, the court acknowledged that

> [m]isappropriation and misuse can rarely be proved by convincing and direct evidence.  In most cases plaintiffs must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege happened did in fact take place.

Fabkom v. R.W. Smith & Assocs., Inc., 1996 WL 531873 at *9 (S.D.N.Y. 1996).  However, the plaintiff there, a software developer, had proffered "several pieces of evidence" to prove

-5-

its case, including evidence that the defendant had developed and was selling a competing software program which was very similar to plaintiff's and documents tending to show that the defendant had access to plaintiff's source code. In the circumstances present in that case, it was reasonable for the court to infer, based upon actual evidence presented, that the defendant had, in fact, used the plaintiff's trade secret information.

In this case, however, EchoMail has presented no evidence, however circumstantial, that AmEx has used the information. Its unsupported speculation that AmEx might use the information at some point in the future or is presently using the information to evaluate EchoMail's competitors is unsupported by any evidence. Any inference that AmEx has used the information is too speculative to support the issuance of a preliminary injunction. Because Plaintiff has failed to convince this Court that its fears regarding AmEx's use of the information are well-founded, it is not likely to succeed on the merits of its misappropriation claim.

### B.   Irreparable Injury

When a plaintiff demonstrates likelihood of success on a misappropriation of trade secrets claim, it need not prove irreparable injury because such harm is presumed. Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc., 2004 WL 1497688 (D. Mass. 2004). EchoMail, however, has not proven a

likelihood of success on its misappropriation of trade secrets claim so the Court will not presume irreparable injury.

Plaintiff has failed to demonstrate a likelihood that it will be injured if a preliminary injunction does not issue. Its unsupported speculation that AmEx and IBM will use the information is insufficient to demonstrate irreparable injury. Furthermore, even if AmEx is, as EchoMail speculates, using EchoMail's trade secret information to evaluate EchoMail's competitors, it is difficult to imagine how that use would damage EchoMail or how any such damage would be irreparable. EchoMail has not alleged that AmEx is currently using its trade secret information in a way that could cause irreparable injury to EchoMail.

IBM and EchoMail have voluntarily entered into a Confidential Disclosure Agreement in which IBM agrees not to disclose or use any information disclosed during the Architecture Review. AmEx has affirmed the existence of the Stand Alone Agreement between EchoMail and AmEx, pursuant to which AmEx agreed to regard as confidential all information related to EchoMail's business and activities and not to disclose or use such information for its own benefit or for the benefit of any other party, and has offered to enter into a further agreement that stipulates that all information relating to EchoMail that was disclosed during the Architecture Review shall be considered

confidential pursuant to the Stand Alone Agreement.  Thus, EchoMail has already received assurances from both defendants that they will treat as confidential the information disclosed during the Architecture Review.

EchoMail has not demonstrated a likelihood of past or future harm stemming from the events underlying its claims in this action.  It is not, therefore, entitled to a preliminary injunction.

## ORDER

In accordance with the foregoing, plaintiff's motion for a preliminary injunction (Docket No. 2) is **DENIED**.

**So ordered.**

                                                /s/ Nathaniel M. Gorton
                                                Nathaniel M. Gorton
                                                United States District Judge

Dated: July 15, 2005