**United States District Court**
**District of Massachusetts**

```
                                    )
ECHOMAIL, INC.                      )
                                    )
              Plaintiff,            )
                                    )
        v.                          )    Civil Action No.
                                    )    05-11318-NMG
AMERICAN EXPRESS CO. and            )
INTERNATIONAL BUSINESS              )
MACHINES CORP.,                     )
                                    )
              Defendants.           )
                                    )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

The plaintiff, EchoMail, Inc. ("EchoMail"), is a provider of web-based software, hardware and services designed for e-mail management. It has filed claims against defendants, American Express Company ("AmEx") and International Business Machines Corporation ("IBM"), for 1) misappropriation of trade secrets, 2) unfair competition, 3) unfair and deceptive acts and practices, and, against AmEx only, 4) breach of contract, 5) breach of the covenant of good faith and fair dealing and 6) interference with contractual relations.

Currently pending before the Court is a motion of AmEx for partial summary judgment and a motion of IBM for judgment on the pleadings.

-1-

## I.   **Background**

In July, 1999, plaintiff entered into a contract with AmEx
which was renewed through 2004. In 2004, the parties entered
into another contract but difficulties ensued in its
implementation. In the Spring of 2005, AmEx began a request-for-
proposal ("RFP") process seeking bids for services that were then
being provided by EchoMail. When EchoMail inquired about the
need for the RFP, AmEx responded that it was merely a
"formality".

In late April, 2005, AmEx notified EchoMail that it would
conduct an "architecture review" of an upgraded version of
EchoMail's product to ensure that implementation of that upgrade
would be successful. In preparation for the review, EchoMail
provided AmEx certain proprietary information and requested that
AmEx forward to it a list of all likely attendees of the review
session.

The review took place on May 4 and 5, 2005, with some
employees of AmEx participating in person at EchoMail's facility
in Cambridge, Massachusetts, and others participating
telephonically. Two IBM employees attended the review even
though they had not been listed among possible participants and
did not identify themselves as IBM representatives at the start
of the review process. According to plaintiff's complaint, well
into the review process and after EchoMail had revealed

-2-

confidential and proprietary information including the "code" to
its technology, one of the IBM employees disclosed that he worked
for IBM and that the information revealed by EchoMail "created a
conflict".

IBM and AmEx have an agreement pursuant to which IBM
provides certain products and services to AmEx. EchoMail asserts
that IBM has sought to obtain its confidential and proprietary
information since 1996. On several occasions, IBM allegedly
inquired about establishing a business relationship with
EchoMail. Plaintiff avers that it would not have consented to
the "architecture review" had it known that IBM personnel would
be present.

AmEx purportedly praised EchoMail during the review and
stated that it was a success at that time. Approximately three
weeks later, however, it informed EchoMail that its product had
failed the review and that, consequently, EchoMail would not be
considered in the new RFP process. AmEx is also alleged to have
orally terminated its contract with EchoMail at that time. The
following day, plaintiff notified AmEx in writing that it was
terminating the parties' contract. As a result of those events,
a business relationship between EchoMail and a company associated
with AmEx also ceased. Plaintiff alleges that the architecture
review was merely a pretext to conceal the true purpose of AmEx
and IBM, namely, to obtain EchoMail's confidential and

-3-

proprietary technology so that they could compete directly
against EchoMail.

This matter was originally filed in Massachusetts Superior
Court but removed by defendants to this Court on the basis of
diversity jurisdiction. Defendants denied liability in their
answers to the complaint. AmEx, moreover, asserted counterclaims
against EchoMail for 1) breach of contract, 2) breach of the
covenant of good faith and fair dealing, 3) replevin, 4)
conversion, 5) unjust enrichment, 6) restitution, 7) breach of
confidential duty and 8) unfair and deceptive acts and practices.
In support of its counterclaims, AmEx alleges that EchoMail
unilaterally terminated the parties' contract in contravention of
its terms and despite prepayment for services by AmEx. AmEx also
asserts that EchoMail has wrongfully retained possession of
AmEx's property, including computer hardware and confidential
customer information, despite requests by AmEx for return of that
property.

Upon removal of the case to federal court on June 23, 2005,
EchoMail moved for a preliminary injunction to prevent both
defendants from using or disseminating its trade secrets. After
hearing the parties on that motion, the Court directed them to
confer in good faith toward negotiating mutually satisfactory
nondisclosure agreements. EchoMail and IBM reached an agreement
thereby mooting EchoMail's request for a preliminary injunction

-4-

against IBM but EchoMail and AmEx failed to come to terms.   On
July 15, 2005, the Court denied EchoMail's motion for a
preliminary injunction against AmEx on the grounds that plaintiff
had failed to demonstrate a likelihood of success or irreparable
injury.   See EchoMail, Inc. v. Am. Express Co., 378 F. Supp. 2d 1
(D. Mass. 2005).

AmEx presently seeks summary judgment on its replevin
counterclaim and IBM seeks judgment on the pleadings with respect
to all claims against it.

## II. **Motion for Summary Judgment on Replevin Counterclaim**

### A. **Legal Standard**

Summary judgment is appropriate where the moving party has
shown, based upon the pleadings, discovery and affidavits, "that
there is no genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of law".   Fed.
R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the
suit under the governing law".   Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 248 (1986).   "Factual disputes that are irrelevant
or unnecessary will not be counted."   Id.   A genuine issue of
material fact exists where the evidence with respect to the
material fact in dispute "is such that a reasonable jury could
return a verdict for the nonmoving party".   Id.

Once the moving party has satisfied its burden, the burden

shifts to the nonmoving party to set forth specific facts showing

that there is a genuine, triable issue.  Celotex Corp. v.

Catrett, 477 U.S. 317, 324 (1986).  The Court is to view the

entire record in the light most hospitable to the nonmovant and

indulge all reasonable inferences in that party's favor.

O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary

judgment is appropriate where the Court determines, after viewing

the record in the nonmovant's favor, that no genuine issue of

material fact exists and that the moving party is entitled to

judgment as a matter of law.

### B.   **Discussion**

AmEx contends that it is entitled to replevin of 1) a SUN

E450 database server that it purchased in order for EchoMail to

service its account (hereinafter, "the server") and 2) e-mail

communications to and from AmEx customers which purportedly

contain confidential information (hereinafter, "confidential

information").  The server and confidential information are both

located at EchoMail's facilities with the confidential

information stored not only on the server but also on archival

"back-up" tapes ("the back-up tapes").  Pursuant to the parties'

contract, plaintiff was required to maintain archived records of

AmEx's data and AmEx was to provide storage for those records.

Hardware such as the server was owned by AmEx while EchoMail

retained ownership of proprietary products configured and

-6-

installed on that hardware.

Under New York law (the location of AmEx and law governing the operative agreement between the parties), an action in replevin lies where the claimant "demonstrate[s] that he has an immediate and superior right to possession of the chattel including proof of ownership". Van Brunt v. Rauschenberg, 799 F. Supp. 1467, 1473 (S.D.N.Y. 1992). Where an original owner seeks replevin of property held by a lawful possessor, the owner must first demand return of that property. Hoelzer v. City of Stamford, 933 F.2d 1131, 1136 (2d Cir. 1991). A claim for replevin under Massachusetts law (EchoMail's location) is similar in that the claimant is required to demonstrate that the goods sought exceed $20 in value and were taken or are being detained from someone entitled to their possession. See Mass. Gen. Laws ch. 247, § 7.

Here, AmEx does not dispute that EchoMail, at one point, lawfully possessed the server and confidential information. EchoMail does not dispute that AmEx demanded return of the server and confidential information or that items of that nature are subject to a replevin action. Furthermore, EchoMail does not challenge the contention that AmEx is the owner of the server and confidential information.

The crux of EchoMail's opposition to the replevin counterclaim is that the confidential information belonging to

-7-

AmEx is imbedded (in both the server and the back-up tapes) in a proprietary database owned by EchoMail. It maintains, therefore, that AmEx is not entitled to the server and confidential information in their current state because AmEx lacks an "immediate, exclusive and unqualified" right to possession of that property in such state. Da Silva v. Coffee Connection, Inc., 1994 WL 879508, No. 943561, at *1 (Mass. Super. Ct. Nov. 17, 1994). In order for EchoMail to return the server and confidential information to AmEx without compromising the confidentiality of its database, it would need to extract and transfer the confidential information into a different, "flat file" format at a cost of approximately \$120,000. EchoMail does not oppose returning the property sought by AmEx provided that AmEx pays the cost of extracting its data from EchoMail's database. Thus, the present dispute between the parties, which is unaddressed by their contractual relationship, is less about AmEx's entitlement to the server and confidential information than about which party should pay the cost of returning that property.

EchoMail cites no case law directly apposite to the circumstances presented here. The case law most analogous to the present dispute is decades old and involves the situation where an unsuccessful defendant in a replevin action received credit for the expense of maintaining the property wrongfully held by

-8-

him.   Thus, judgments in replevin for unlawfully held vehicles
and machinery have been diminished by amounts attributable to
maintenance and repairs to such property.   See Cooper v. Kipp, 65
N.Y.S. 379, 380 (N.Y. App. Div. 1900) (stating that return of a
wagon pursuant to a successful replevin claim was to follow the
claimant's payment of repairs to that property); F.G. Madara,
Annotation, Credit for Upkeep or Other Expense in Computing
Damages for Use or Detention of Property in Replevin, 7 A.L.R. 2d
933 (2006) (citing only two cases after 1950).

Because AmEx has provided persuasive evidence that it is
entitled to possession of the server and confidential
information, and EchoMail has not shown that AmEx's property is
incapable of being extracted from EchoMail's database, the Court
will allow AmEx's motion for summary judgment.   Furthermore, AmEx
will not be required to pay the cost of extraction prior to
recovery.   First, it was EchoMail's decision to store AmEx's
property in a proprietary database.   Second, EchoMail has not
proved that it is entitled to retain AmEx's property unless and
until AmEx pays for the extraction.   The Court's conclusion does
not foreclose EchoMail from seeking reimbursement of such costs
provided that plaintiff can prove that it is legally entitled to
be repaid.

## III. **Motion for Judgment on the Pleadings**

### A.    **Legal Standard**

IBM has moved for judgment on the pleadings which the Court
is to consider under the same standard as a motion to dismiss for
failure to state a claim upon which relief can be granted.  The
court "must accept all of the nonmovant's well-pleaded factual
averments as true, and draw all reasonable inferences in his
favor".  Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir.
2005) (quoting Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st
Cir. 1998)) (internal citations omitted).  The movant cannot
prevail "unless it appears beyond doubt that the [nonmovant] can
prove no set of facts in support of his claim which would entitle
him to relief".  Id.

Review of motions for judgment on the pleadings is, as its
name suggests, limited to the pleadings and thus,

> [o]rdinarily a court may not consider any documents that are
> outside of the complaint, or not expressly incorporated
> therein, unless the motion is converted into one for summary
> judgment.

Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,
267 F.3d 30, 33 (1st Cir. 2001) (citation omitted).

### B.    **Discussion**

The plaintiff's claims with respect to which IBM now seeks
judgment in its favor are 1) misappropriation of trade secrets in
violation of Massachusetts and New York law, 2) unfair
competition and 3) unfair and deceptive acts and practices in

-10-

violation of Mass. Gen. Laws ch. 93A, § 11 (hereinafter, "Chapter 93A"). Although IBM's contentions are compelling in a number of respects, the Court concludes that the pleadings support plaintiff's legal claims to an extent sufficient to withstand summary disposition at this stage.

## 1. Misappropriation of Trade Secrets

A claim for misappropriation of trade secrets under Massachusetts law requires a demonstration that the plaintiff took reasonable steps to preserve the confidentiality of a trade secret which the defendant acquired and used by improper means or by participating in the breach of a confidential relationship. See Data Gen. Corp. v. Grunman Sys. Support Corp., 36 F.3d 1147, 1165 (1st Cir. 1994) (citation omitted). The elements of misappropriation of trade secrets under New York law are similar. The plaintiff must allege possession of a trade secret that the defendant used in breach of an agreement, confidence or duty, or by discovering it through improper means. See N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 43-44 (2d Cir. 1999) (citation omitted).

Here, IBM contends that EchoMail has failed to allege a misappropriation claim in two respects. First, it asserts that EchoMail did not seek to protect the confidentiality of its information. IBM points out that, once EchoMail learned that an IBM employee was attending the architecture review, it neither

-11-

asked him to leave nor sought to protect its information in the manner set forth in the parties' then-existing confidential disclosure agreement.   Second, IBM asserts that there is no evidence in support of its "use" of any EchoMail trade secret.

In response, EchoMail argues that the security precautions it undertook to protect its confidential information were reasonable.  By the time it learned that IBM personnel were present at the architecture review, a significant amount of confidential and proprietary information, including its "code", had already been revealed.  Furthermore, EchoMail asserts that it has adequately alleged use of its trade secrets by IBM even if it cannot determine, at this point in time, the extent of that use. EchoMail contends, for example, that IBM has used plaintiff's information in its consulting work for AmEx.

The facts presented in the pleadings support inferences that the plaintiff made reasonable efforts to protect the confidentiality of its trade secrets and that IBM used information learned during EchoMail's architecture review in order to benefit its business relationship with AmEx. Consequently, the Court will deny IBM's motion for judgment with respect to the misappropriation claim.

## 2.   **Unfair Competition**

A state-law claim for unfair competition is similar to a claim brought under the Lanham Act in that the plaintiff must

-12-

show that the defendant's conduct is likely to cause confusion in
the marketplace.  Bayshore Group Ltd. v. Bay Shore Seafood
Brokers, Inc., 762 F. Supp. 404, 415 (D. Mass. 1991) (citing
Kazmaier v. Wooten, 761 F.2d 46, 52 (1st Cir. 1995)).  Unlike its
federal counterpart, however, a state-law unfair competition
claim also requires proof of bad faith.  See Genesee Brewing Co.,
Inc. v. Stroh Brewing Co., 124 F.3d 137, 149 (2d Cir. 1997).  See
also Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1044 (2d
Cir. 1980) ("The essence of an unfair competition claim under New
York law is that the defendant has misappropriated the labors and
expenditures of another.") (citing cases).

IBM contends that plaintiff's unfair competition cannot
survive under Massachusetts or New York law because 1) there can
be no likelihood of confusion where there is no evidence that IBM
has used EchoMail's confidential and proprietary information and
2) there is no evidence of bad faith.  In opposition, EchoMail
responds that it has alleged use of its information by IBM as
well as defendant's bad faith.

Although IBM's position with respect to the unfair
competition claim is stronger than its challenge to the
misappropriation claim, the Court concludes that IBM is still not
entitled to judgment on the pleadings.  The allegations of
EchoMail adequately support an inference that IBM acquired and
used plaintiff's confidential information in bad faith.  While

-13-

the pleadings contain no facts demonstrating a likelihood of

consumer confusion, an inference of such confusion is not

irreconcilable with the present record and the conclusion that

confusion exists requires a fact-intensive assessment whose

determination at this juncture would be premature.

### 3.   **Unfair and Deceptive Practices**

A successful Chapter 93A claim requires proof that

the defendant's actions were 'within at least the penumbra
of some common-law, statutory, or other established concept
of unfairness,' or were 'immoral, unethical, oppressive or
unscrupulous' ...

Boyle v. Int'l Truck & Engine Corp., 369 F.3d 9, 15 (1st Cir.

2004) (citations omitted).  Because misappropriation of trade

secrets under Massachusetts law can, by itself, constitute a

violation of Chapter 93A, judgment for IBM on that claim is

inappropriate at this time.  Mass. Eye & Ear Infirmary v. QLT

Phototherapeutics, Inc., 412 F.3d 215, 243 (1st Cir. 2005)

(citation omitted).

**ORDER**

Based on the foregoing memorandum,

1)   the motion of AmEx for summary judgment on its replevin
     counterclaim (Docket No. 31) is **ALLOWED,** and

2)   the motion of IBM for judgment on the pleadings (Docket
     No. 45) is **DENIED.**

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated: July 14, 2006

-15-