UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
ECHOMAIL, INC.,                        )
                                                      )
      Plaintiff,                            )
                                                      )
v.                                                   )     Civil Action No. 05-11318-NMG
                                                      )
AMERICAN EXPRESS CO.         )
and IBM CORP.,                          )
                                                      )
      Defendants.                        )
_____)

**PLAINTIFF ECHOMAIL, INC.'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES FROM DEFENDANT IBM CORPORATION**

Pursuant to Fed. R. Civ. P. 37(a), plaintiff EchoMail, Inc. ("EchoMail") hereby moves to compel the answers to interrogatories by defendant International Business Machines Corporation ("IBM"). EchoMail's motion to compel is necessary because IBM has withheld relevant information from EchoMail. The requested information is highly relevant because it concerns several of the central issues in this case: (1) the role IBM played in the May 2005 Architecture Review of EchoMail's product during which EchoMail's confidential and proprietary technology was revealed; (2) the relationship between AmEx and IBM that gave rise to IBM's participation in the May 2005 Architecture Review; and (3) IBM's motivation in seeking to establish a business relationship with EchoMail on several occasions between 1996 and 2004.

Accordingly, this Court should allow EchoMail's motion and order IBM to fully answer the following interrogatories: 6, 8, 9, 10, 11, and 12 of *Plaintiff EchoMail, Inc.'s First Set of Interrogatories to Be Answered by Defendant IBM Corp*.

**RELEVANT BACKGROUND**

I.      EchoMail's Verified Complaint

EchoMail's Verified Complaint raised three claims against IBM: (1) misappropriation of trade secrets in violation of Mass. Gen. Laws c. 93, § 42 and New York law (Count I); (2) common law unfair competition (Count II); and (3) unfair and deceptive trade practices in violation of Mass. Gen. Laws. c. 93A, § 11 (Count III). EchoMail set forth the basis for its claims against IBM as follows:

- IBM recognizes EchoMail as an industry leader in hosted, web-based email management software and services. Since in or about 1996, IBM has sought to learn EchoMail's confidential and proprietary technology related to hosted, web-based email management software and services. EchoMail has repeatedly refused to provide IBM access to confidential and proprietary technology related to EchoMail's hosted, web-based email management software and services. Compl. ¶ 26.

- In or about 1996, IBM approached EchoMail seeking to host EchoMail's applications at IBM's facilities so IBM could "resell" EchoMail to other customers. EchoMail refused to allow IBM to host EchoMail's applications, since EchoMail was capable of providing the service itself. Compl. ¶ 27.

- In or about 2000, IBM approached EchoMail seeking to invest in EchoMail. EchoMail again refused. Compl. ¶ 28.

- In or about 2002, IBM approached EchoMail seeking a partnership in which IBM would gain access to EchoMail's confidential and proprietary outbound email marketing technology and code. EchoMail refused to give IBM access to its confidential and proprietary technology. Compl. ¶ 29.

- In or about 2004, IBM approached EchoMail seeking to "host," or provide the hardware necessary, to run EchoMail's web-based, "on demand" software applications. EchoMail, which designed, built and developed its own hardware facility, again refused, since EchoMail already offered its technology in a hosted web-based model. Compl. ¶ 30.

- "[I]n late-April, 2005, AmEx confirmed to EchoMail that AmEx wanted to proceed with an "architecture" review of EchoMail's new, proprietary, version 8.1, to which EchoMail's customers would soon upgrade. In general, an architecture review reveals the confidential and proprietary technology, or "code," contained in hardware and/or software." Compl. ¶¶ 38-39.

- "AmEx falsely claimed that AmEx's desire for an architecture review was to make sure that the upgrade to version 8.1 was successful, that EchoMail and AmEx were "partners," and that AmEx wanted to help EchoMail succeed in its upgrade to the new version. Based on Daniels' statements, Shiva reluctantly agreed to the architecture review. Prior to the review, EchoMail provided AmEx with certain proprietary information in preparation for the review. On May 4 and 5, 2005, the architecture review occurred. At least eight employees from AmEx participated in the review, either telephonically or by coming in person to EchoMail's facility in Cambridge." Compl. ¶¶ 40-41.

- "The architecture review exposed to AmEx's employees EchoMail's confidential and proprietary information and technology, or 'code,' including the process by which EchoMail hosts its web-based, on demand technology." Compl. ¶ 42.

- In fact, AmEx surreptitiously included in the review technical personnel from IBM without disclosing this fact in advance to EchoMail. This violated the terms of the contract between AmEx and EchoMail. In fact, lists of personnel who would be attending the architecture review which were provided by AmEx to EchoMail had not referred to any personnel from IBM. In fact, the presence of IBM personnel would not have been disclosed to EchoMail at all, except that very late in the review process, an IBM employee participating in the review by phone stated that he worked for IBM and that he believed that the information revealed to him "created a conflict." EchoMail would not have allowed the architecture review to occur at all if EchoMail had known that personnel from IBM would be present. Since the time of the review, and despite EchoMail's requests, AmEx has refused to provide any information to EchoMail concerning IBM's participation." Compl. ¶¶ 44-45

- "In fact, the real reason for AmEx's architecture review, which AmEx intentionally did not disclose to EchoMail, was to gain access to all details of EchoMail's confidential and proprietary technology so that AmEx and IBM could use the technology after AmEx breached its contract and severed its relationship with EchoMail. In addition, AmEx intended to use the architecture review as a pretext for (a) continuing its RFP process without EchoMail's participation, and (b) terminating its contract with EchoMail." Compl. ¶ 49.

Thus, EchoMail's claims against IBM are premised upon the allegations that IBM actively sought to establish a business relationship with EchoMail in an effort to gain access to EchoMail's confidential and proprietary technology and that IBM, in concert with AmEx, gained access to EchoMail's technology through its participation in the May 2005 Architecture Review without EchoMail's knowledge or consent. Armed with EchoMail's confidential and proprietary

3

information, IBM is now positioned to assist AmEx and other email response management enterprises in the development of an email response management system.

    II.    IBM's Answer

In its Answer to EchoMail's Verified Complaint, served on July 11, 2005, IBM denied many of the allegations in the Verified Complaint and offered several affirmative defenses. For example, IBM denied that the May 2005 Architecture Review exposed EchoMail's confidential and proprietary technology and IBM answered that it lacked sufficient information as to whether its personnel had been surreptitiously included in the Review without EchoMail's knowledge or consent.

    III.    EchoMail's Interrogatories

EchoMail served its first set of interrogatories on IBM on January 19, 2006. *Plaintiff EchoMail, Inc.'s First Set of Interrogatories to Be Answered by Defendant IBM Corp.* is attached hereto as Exhibit A. EchoMail's interrogatories sought information concerning IBM's role in the May 4-5, 2005 Architecture Review, as well as information concerning the relationship between AmEx and IBM that gave rise to IBM's participation in the May 4-5, 2005 Architecture Review EchoMail's interrogatories also sought information concerning IBM's motivation in attempting to establish a business relationship with EchoMail on several occasions between 1996 and 2004.

    IV.    IBM's Answers to EchoMail's Interrogatories Are Deficient

On March 27, 2006, IBM served its objections and responses to EchoMail's interrogatories. *International Business Machines Corporation's Objections and Responses to Plaintiff's First Set of Interrogatories* is attached hereto as Exhibit B. Based on these responses, it is clear that IBM's answers to EchoMail's interrogatories are deficient in at least the following respects:

    A.    *Interrogatory No. 6*

IBM objected to this interrogatory which seeks the "reasons or reasons that IBM employees or agents were asked to evaluate EchoMail's products or services or evaluate AmEx's managed email services prior to, during, and after the May 2005 Architecture (Technical Due Care) review" as "overbroad, unduly burdensome, vague and ambiguous, and seeking discovery of information irrelevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence to the extent that it seeks 'the reason or reasons IBM employees or agents were asked to evaluate . . . AmEx's managed email services.'" IBM's objection is baseless. The information sought by Interrogatory No. 6 is directly relevant to the relationship between AmEx and IBM that gave rise to IBM's participation in the May 4-5, 2005 Architecture Review. Moreover, this Interrogatory is directly relevant to the real reason AmEx required EchoMail to undergo an architecture review, and Interrogatory No. 6 thus should be answered.

    B.    *Interrogatory Nos. 8, 9 & 10*

IBM objected to Interrogatories 8, 9, and 10 as "overbroad, unduly burdensome, and seeking discovery of information irrelevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence." IBM further objected to Interrogatories 8, 9, and 10 as vague and ambiguous as to the term "business arrangement." Finally, IBM stated that EchoMail has not provided IBM with sufficient information to allow it to respond to Interrogatories 8, 9, and 10.

As an initial matter, the information sought by Interrogatories 8, 9, and 10 is highly relevant to several of the central issues in the case. In particular, Interrogatories 8 and 9 seek the identity of the IBM employees or agents who were involved in IBM's decision to contact

5

EchoMail concerning a business relationship whereby IBM would host EchoMail's applications at IBM's facilities between 1996 and 2004.  Similarly, Interrogatory No. 10 seeks a description of the reason or reasons that IBM sought to enter into a business relationship with EchoMail between 1996 and 2004.

In addition, IBM's objection to EchoMail's use of the term "business arrangement" in Interrogatories 8, 9, and 10 is evasive and unjustified.  IBM's numerous attempts to establish a business relationship with EchoMail between 1996 and 2004 are central to one of the core issues of the case -- namely IBM's motivation in attempting to gain access to EchoMail's confidential and proprietary technology.  Consequently, information concerning the relationship between IBM and EchoMail during that entire period -- not just during the period prior to and immediately following the Architecture Review -- is highly relevant and, to date. IBM has withheld this information.  Consequently, IBM should be compelled to answer Interrogatories 8, 9, and 10.

  C. *Interrogatory No. 11*

IBM objected to this Interrogatory, which seeks the identity of "each and every IBM employee or agent who communicated with IBM concerning EchoMail's managed email products and services between 1996 and 2005" on the grounds that it is "overbroad, unduly burdensome, and seeking discovery of information irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence."  IBM further objected to Interrogatory No. 11 on because "EchoMail has not provided IBM with sufficient information to allow IBM to respond to this Interrogatory."  As an initial matter, Interrogatory No. 11 contains an inadvertent typographical error.  It was intended to read:

>Identify each and every IBM employee or agent who communicated with *EchoMail* concerning EchoMail's managed email products and services between 1996 and 2005.

Notwithstanding the inadvertent typographical error in the request, the information sought is highly relevant to IBM's efforts to establish a business relationship with EchoMail between 1996 and 2005 and its motivation in doing so. Accordingly, IBM should be ordered to answer Interrogatory No. 11, as amended.

>    D.    *Interrogatory No. 12*

Finally, IBM objected to Interrogatory No. 12 which seeks the identity of "each and every entity in the business of managed email services with which IBM has a business relationship of any kind" and a description of the "nature of [those] relationship[s]" on the grounds that it is "overbroad, unduly burdensome, and seeking discovery of information irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence." IBM further objected to Interrogatory No. 12 as "vague and ambiguous with respect to the phrase 'business relationship of any kind.'" As with IBM's other objections, this one is without a foundation. IBM's business relationships with other managed email service providers is highly relevant to determining the nature and scope of IBM's role in the May 2005 Architecture Review and may lead to the discovery of admissible evidence bearing on the real reason that AmEx required EchoMail to submit to an architecture review in May 2005. IBM should therefore be compelled to answer Interrogatory No. 12.

## ARGUMENT

>    I.    The Information EchoMail Seeks Is Discoverable Pursuant to Fed. R. Civ. P. 26(b)(1)

Fed R. Civ. P. 26 (b) (1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."

7

Discovery is therefore relevant "if there is *any* possibility that the information sought may be relevant to the subject matter of the action." *Gagne v. Reddy*, 104 F.R.D. 454, 456, (D. Mass. 1984). Furthermore, the district court has "substantial leeway in managing pretrial matters, particularly decisions pertaining to the scope of discovery." *Navarro de Cosme v. Hospital Pavia*, 922 F.2d 926, 930 (1st Cir. 1991).

As explained in detail above, the information EchoMail seeks is relevant to determining the true purpose of the May 4-5, 2005 Architecture Review and uncovering IBM's role in that Review. Additional information is relevant to outlining IBM's repeated attempts to establish a business relationship with EchoMail and its motivation for doing so. Moreover, EchoMail believes that the answers to these Interrogatories are likely to reveal the communications between AmEx and IBM concerning the role IBM was expected to play in the Review.

II.  There is No Basis for IBM's Refusal to Fully Answer EchoMail's Interrogatories

IBM's objections to EchoMail's interrogatories 6, 8, 9, 10, 12 are entirely without foundation and should be rejected.[1] Contrary to IBM's assertions that EchoMail's interrogatories seek discovery of information that is not relevant to the subject matter of this action and are not reasonably calculated to lead to the discovery of admissible evidence, the information EchoMail seeks is highly relevant. IBM's repeated attempts to establish a business relationship over a nearly ten year period has a direct bearing on IBM's motive in participating in the May 4-5, 2005 Architecture Review of EchoMail's email management system. Moreover, IBM's relationship with other enterprises that provide email response management systems is relevant to determining the manner in which IBM and its business partners can and may use EchoMail's confidential and proprietary information to develop and deploy their own email

---

[1] EchoMail concedes that Interrogatory No. 11 contained a typographical error that prevented IBM from fully answering that request.

response management system. In short, IBM -- without any justification -- has withheld from production information which is highly relevant to this litigation and should be compelled to produce this information.

## CONCLUSION

For the foregoing reasons, Plaintiff EchoMail's motion to compel should be granted and this Court should order defendant IBM to fully answer Interrogatories 6, 8, 9, 10, 11, and 12 of *Plaintiff EchoMail, Inc.'s First Set of Interrogatories to Be Answered by Defendant IBM Corp.* within five (5) days of the Court's order.

ECHOMAIL, INC.,
By its attorneys

/s/ Alan D. Rose, Jr.
_____
Alan D. Rose (BBO#427280)
Alan D. Rose, Jr. (BBO#628871)
Lisa A. Tenerowicz (BBO#654188)
ROSE, CHINITZ & ROSE
29 Commonwealth Avenue
Boston, MA  02116
Tel: 617-536-0040
Fax: 617-536-4400

Date:  October 13, 2006

### Certificate of Compliance With Local Rules 7.1

I, Alan D. Rose, Jr., attempted to communicate with counsel for IBM on October 11, 2006 in an effort to resolve or narrow the discovery issues raised by this motion.  IBM's counsel did not respond to my communication and as a result, counsel have not been able to resolve the issues raised in this motion.

/s/ Alan D. Rose, Jr.
_____
Alan D. Rose, Jr., Esq.

## Certificate of Service

      I hereby certify that this document filed through the ECF system on this 13th day of October, 2006, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 13, 2006.

                                              /s/ Alan D. Rose, Jr.
                                              _____
                                              Alan D. Rose, Jr.