UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
)
ECHOMAIL, INC.,                            )
                                           )   Civil Action No. 05-11318 (NMG)
            Plaintiff,                     )
                                           )
v.                                         )
                                           )
AMERICAN EXPRESS CO. and                   )
IBM CORP.,                                 )
                                           )
            Defendants.                    )
_____)

**DEFENDANT AMERICAN EXPRESS COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE TO STRIKE THE REPORT AND EXCLUDE THE TESTIMONY OF PLAINTIFF ECHOMAIL'S EXPERT WITNESS DR. DANIEL N. JACKSON**

Defendant American Express Company ("AXP") hereby submits this Memorandum of Law in Support of its Motion in Limine to strike the expert report of Daniel N. Jackson (the "Report") served by Plaintiff EchoMail, Inc. ("EchoMail") and to preclude Dr. Jackson from testifying at trial. In his Report,[1] Dr. Jackson purports to offer an opinion as to whether the information presented by EchoMail at the May 4 and 5, 2005 Technical Due Care or Architecture Review meeting (the "Review") was proprietary and constituted trade secrets. Despite repeated requests from AXP, EchoMail refused to produce Dr. Jackson for a deposition. More fundamentally, the data and information on which Dr. Jackson relies – and the methodology Dr. Jackson employs – are unreliable, unverifiable, and include documents purportedly related to the Review that EchoMail never produced during fact discovery. Accordingly, AXP respectfully requests that its Motion in Limine be granted, that Dr. Jackson's Report be stricken, and that Dr. Jackson be excluded from testifying at trial.

---

[1] EchoMail has marked the Report as confidential. Pursuant to the parties' Stipulation and Order, *see* Docket No. 50, AXP has concurrently filed an assented-to motion to impound the Report.

**I.    DR. JACKSON'S REPORT SHOULD BE STRICKEN AND HIS TESTIMONY AT TRIAL SHOULD BE EXCLUDED BECAUSE ECHOMAIL FAILED TO PRODUCE DR. JACKSON FOR A DEPOSITION.**

After receiving Dr. Jackson's Report dated April 26, 2007, the defendants attempted to schedule Dr. Jackson's deposition prior to the June 8, 2007 deadline to complete expert depositions. *See* Declaration of Louis Smith in Support of American Express Company's Motion in Limine to Strike the Expert Report of Daniel N. Jackson ("Smith Decl."), at ¶ 2. In response, EchoMail indicated that Dr. Jackson would be out of the country through June 8, 2007, but was available on June 14, 2007 for his deposition. *Id*. The defendants agreed to go forward with Dr. Jackson's deposition on June 14, 2007. *Id*. at ¶ 3. On June 8, 2007, however, counsel for EchoMail unilaterally adjourned Dr. Jackson's deposition in light of a trial commitment in another matter. *Id*. at ¶ 4. Counsel for EchoMail explained that "[w]e will work with all of you to find a new set of mutually convenient dates for these depositions." *Id.*

Thereafter, AXP requested that EchoMail provide additional dates for Dr. Jackson's deposition. *Id*. at ¶ 5. Counsel for EchoMail refused to supply any such dates, but instead indicated that EchoMail may object to producing Dr. Jackson for a deposition. *Id*. After EchoMail never further responded with regard to AXP's request, counsel for AXP sent a letter requesting that EchoMail advise whether it would produce Dr. Jackson for a deposition. *Id*. EchoMail never responded to that letter, never supplied the requested dates for a deposition of Dr. Jackson, and never produced Dr. Jackson for a deposition. *Id.*

Fed. R. Civ. P. 26(b) grants "an adverse party the *right* to depose a testifying expert." *See B.C.F. Oil Ref., Inc. v. Consol. Edison Co. of N.Y., Inc.*, 171 F.R.D. 57, 65 (S.D.N.Y. 1997) (emphasis added); Fed. R. Civ. P. 26(b)(4)(a) ("A party may depose any person who has been

identified as an expert whose opinions may be presented at trial."). EchoMail's refusal to produce Dr. Jackson for a deposition has denied AXP this right.

Moreover, at this late stage of the proceedings, EchoMail's refusal to produce Dr. Jackson for a deposition has irrevocably prejudiced AXP and has substantially impaired AXP's ability to prepare for trial. As will be discussed further herein, Dr. Jackson relied on "interviews" with EchoMail's CEO V.A. Shiva Ayyadurai ("Mr. Shiva") to support his opinions, and AXP was never afforded an opportunity to find out what was disclosed during those "interviews." Accordingly, Dr. Jackson's Report should be stricken and he should be excluded from testifying at trial. *See e.g., Small v. Gen. Motors Corp.*, 2006 WL 3332989, at *3-5 (D. Me. Nov. 15, 2006) (granting motion to strike expert witness based on failure to produce witness for deposition); *Magee v. Paul Revere Life Ins. Co.*, 178 F.R.D. 33, 36 (E.D.N.Y. 1998) (precluding expert witness testimony at trial where "plaintiffs fail[ed] to produce him as an expert for deposition").

## II. DR. JACKSON'S REPORT AND TESTIMONY SHOULD BE EXCLUDED BECAUSE HE RELIES ON DOCUMENTS THAT WERE NOT PRODUCED DURING DISCOVERY AND BASES HIS OPINIONS ON UNRELIABLE DATA.

Dr. Jackson's Report relies heavily on documents that were never produced during fact discovery and private "interviews" with Mr. Shiva, the CEO of EchoMail. Because his Report completely lacks an appropriate foundation, his testimony should be excluded in its entirety.

### A. Dr. Jackson's Report and Testimony Should Be Excluded Because he Relies Heavily on Documents That Were not Produced in Discovery.

On October 11, 2006, EchoMail produced its last document during fact discovery, bearing Bates number ECO 21689. Smith Decl. ¶ 7. The depositions of the EchoMail representatives were completed by October 13, 2006. After repeated extension motions filed by

3

EchoMail, on April 13, 2007, fact discovery closed. *Id.* at ¶ 6. Two weeks later, EchoMail served Dr. Jackson's Report dated April 26, 2007. *Id.* at ¶ 2.

Dr. Jackson identifies seven (7) documents (other than pleadings or patent filings) that he relied upon in forming his opinions. *See* Report, Exhibit B (items 10-16). He attached copies of these documents to his Report. Four of those items were identified by their deposition exhibit number,[2] but three were identified by Bates numbers. Those three documents were described as "EchoMail's Architecture Evolution (ECO 21690-21705)" (item 10), "EchoMail PowerPoint Slides (ECO 21707-21715)" (item 14), and "EchoMail Production Infrastructure (ECO 21706)" (item 15). Items 10, 14 and 15 – covering Bates numbers ECO 21690-21715 – were not produced during fact discovery. Smith Decl. ¶ 8. Moreover, when it served Dr. Jackson's Report, EchoMail never brought to AXP's attention that it was producing these additional documents or that Items 10, 14 and 15 had never been produced during fact discovery. *Id.*

In forming his opinions, Dr. Jackson indicates that he "interviewed V.A. Shiva Ayyadurai ("Shiva"), EchoMail's chairman and CEO, and a key participant in the meeting, on two occasions in order to determine what information was provided orally by EchoMail to Amex and IBM in explanation of the documents presented." Report, ¶ 7. AXP, however, was never afforded an opportunity to ask Mr. Shiva or any other EchoMail representatives about items 10, 14, and 15, because they were not produced to AXP during fact discovery or prior to the completion of the depositions of the EchoMail representatives.

Under Fed. R. Civ. P. 26(e), a party is required to "seasonably" amend a prior discovery response if the party learns that the response is in some respect incorrect. *See Klonoski v.*

---

[2] One of the deposition exhibits relied on by Dr. Jackson is the Technology Evaluation Questionnaire ("TEQ") (item 11). As explained in a separate motion *in limine*, because EchoMail electronically filed the TEQ in the public court record, the TEQ itself and the information contained therein cannot be considered confidential or trade secrets. This provides further support for striking the Report of Dr. Jackson.

4

*Mahlab*, 156 F.3d 255, 268 (1st Cir. 1998).  Fed. R. Civ. P. 37(c)(1) imposes sanctions for failure to comply, stating that "[a] party that without substantial justification fails to . . . amend a prior response to discovery as required by Rule 26(e) is not, unless such failure is harmless, permitted to use [such] evidence at trial."  In this case, EchoMail's late production of items 10, 14, and 15 was neither justified nor harmless.  *See* Fed. R. Civ. P. 37(c)(1).

At the very core of EchoMail's misappropriation claim is the allegation that EchoMail disclosed proprietary information during the Review.  Despite nearly two years of discovery, EchoMail attached the PowerPoint allegedly shown during the Review and other documents to its expert's report after fact discovery had closed and all fact depositions had been completed.  Items 10, 14 and 15 should be excluded at trial as AXP has been severely prejudiced as it was not able to question the EchoMail witnesses about the documents or develop an evidentiary record in response to the documents.  Moreover, because Dr. Jackson relies so heavily on these documents (almost half of the documents he relies on were never produced in discovery), his Report and testimony should be excluded.  *See* Fed. R. Civ. P. 26(e)(2); 37(c)(1); *Hipsaver Co., Inc. v. J.T. Posey Co.*, 497 F. Supp. 2d 96, 103-04 (D. Mass. 2007) (excluding sales data produced after the close of discovery pursuant to Rules 26(e) and 37(c)(1)); *Portland Natural Gas Transmission Sys. v. 4.83 Acres More or Less*, 2000 WL 1425761, at *3 (1st Cir. Sept. 20, 2000) (excluding documents which were produced on the day discovery closed pursuant to Rules 26(e) and 37(c)).

> **B.    Dr. Jackson's Report and Proposed Testimony at Trial Should be Excluded Because Dr. Jackson Relies on "Interviews" with Mr. Shiva.**

Dr. Jackson's Report is largely based on two "interviews" with Mr. Shiva, EchoMail's Chairman and CEO.  Dr. Jackson's heavy reliance on his unsworn, undiscoverable interviews with Shiva not only fall far short of the standard of reliability required under Fed. R. Evid. 702

5

and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), but also violate Fed. R. Civ. P. 26(a)(2)(B)'s stringent requirement that all "data or other information considered by [an expert] witness in forming [an] opinion[]" [] be contained in an expert's report.  Accordingly, Dr. Jackson should be precluded from testifying at trial.

     1.     <u>Dr. Jackson's Methodology Is Not Reliable.</u>

In determining whether expert testimony is admissible under Fed. R. Evid. 702, 703 and *Daubert*, courts assume a "gatekeeper" function to determine whether the "expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *See Daubert*, 509 U.S. at 597.  While an expert may rely on inadmissible evidence in forming an opinion, the facts and data upon which an expert relies must be "of a type reasonably relied upon by experts in the particular field."  *See* Fed. R. Evid. 703.  Trial courts give "careful consideration" to any inadmissible facts upon which an expert relies.  *See Univ. of R.I. v. A.W. Chesterton Co.*, 2 F.3d 1200, 1218 (1st Cir. 1993).  Significantly, an expert report that relies on anecdotal evidence or undiscoverable interviews is not methodologically sound enough to provide reliable evidence.  *See id.* at 1217-19 (excluding testimony of expert who relied on interviews).

Dr. Jackson admits that he relied on two undocumented "interviews" with Mr. Shiva for "the topics and issues discussed during the [Review]."  Report, ¶ 9.  During the interviews, Mr. Shiva apparently provided "commentary" on and "explanations" of materials presented at the Review.  *Id.* at ¶ 13.  Based on Shiva's "commentary" and "explanations," Dr. Jackson opines that there are certain categories of information that were discussed at the Review.  *Id.* at ¶¶ 13-21.  In Section "C" of his Report, Dr. Jackson provides several examples of specific design details within those categories that EchoMail purportedly disclosed at the Review.  *Id.* at ¶ 32-66.  According to Dr. Jackson, the disclosure of these design details – as described to Dr. Jackson by

6

Mr. Shiva – provided "Amex and IBM [with] important and valuable information that was not disclosed in [EchoMail's] patents." *Id.* at ¶¶ 32-33.

Dr. Jackson's unverifiable interviews with Mr. Shiva are hardly the kinds of facts and data "reasonably relied upon by experts." *See Playtex Prods., Inc. v. Proctor & Gamble Co.*, 2003 WL 21242769, at *9-10 (S.D.N.Y. May 28, 2003) ("Among other deficiencies, [the expert's] conclusion, based on anecdote, has not and cannot be tested or verified and has an insufficient reliable foundation to permit it to be considered."). Dr. Jackson failed to review, for example, *any* deposition testimony of the numerous individuals who were present at the Review – including, incredibly, the sworn deposition testimony of Mr. Shiva himself. *See Barna v. U.S.*, 89 F. Supp. 2d 983, 992 (rejecting expert's testimony because, among other things, expert ignored deposition and trial testimony, "evidently preferring instead to come up with a conclusion that had no legitimate anchor in the evidence.").

Dr. Jackson's reliance on conversations with Mr. Shiva is similar to the expert's improper reliance on interviews in *University of Rhode Island*, in which the First Circuit affirmed the district court's exclusion of an expert's testimony:

> [The expert's] "damages" assessment was not based solely on the conventional examination and compilation of documents from which an expert objectively might ascertain the overtime labor costs incurred in repairing Endeavor's ballast tanks . . . . Rather, [the expert] relied on "interviews" with undisclosed URI employees and "outside vendors," conducted either by himself or other URI officials who reported to him.

2 F.3d at 1218.[3]  Accordingly, Dr. Jackson should be precluded from testifying at trial.

---

[3] *See also United States v. Sebaggala*, 256 F.3d 59, 66 (1st Cir. 2001) (affirming exclusion of proposed testimony because it "was grounded in 'anecdotal experiences' and was 'speculative at best.'"); *Playtex Prods.*, 2003 WL 21242769, at *9-10 (excluding testimony of expert because the expert's conclusions "found solely on 'anecdotal evidence' are unreliable and are not based on scientific knowledge); 6 James Wm. Moore, et al., Moore's Federal Practice, ¶ 702.05[2][b] (3d ed. 2007) ("Another concern is whether the [expert] witness relied unduly on anecdotal evidence in arriving at an opinion.").

7

2.     EchoMail Failed to Disclose the Bases for Dr. Jackson's Opinion.

Pursuant to Fed. R. Civ. P. 26(a)(2)(B), EchoMail is required to disclose the bases for Dr. Jackson's expert opinion. *See* Fed. R. Civ. P. 26(a)(2)(B) (stating that an expert's report must "contain . . . the data or other information considered by the witness in forming the opinions"). Further, under Fed. R. Civ. P. 37(c)(1), parties lacking "substantial justification" for the failure to disclose information required by Rule 26(a) are "not, unless such failure is harmless, permitted to use as evidence at a trial . . . any . . . information not so disclosed." Thus, Rule 37(c) provides a "self-executing sanction" for failure to make evidentiary disclosures required by the Federal Rules. *See Oritz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de P.R.*, 248 F.3d 29, 33 (1st Cir. 2001).

EchoMail failed to disclose the data and information on which Dr. Jackson relies most heavily in his Report – his "interviews" with Mr. Shiva. EchoMail has not provided AXP with any transcript, notes, outline, or memoranda detailing the content of Dr. Jackson's interviews. Moreover, EchoMail's failure to disclose the content of Dr. Jackson's one-on-one, unsworn interviews with Mr. Shiva were neither substantially justified nor harmless. To compound the problem, EchoMail refused to produce Dr. Jackson for a deposition. In any event, even if he had been produced for a deposition, Dr. Jackson could not possibly recall – and, therefore, AXP could not possibly obtain – the actual "data or other information" that he "considered" in forming his opinion. *See* Fed. R. Civ. P. 26(a)(2)(B).

Under the Federal Rules, AXP is entitled to the content of Dr. Jackson's conversation with Mr. Shiva. *See id.; Connolly v. Bidermann Inds., U.S.A., Inc.*, 1999 U.S. Dist. LEXIS 2435, at *2 (S.D.N.Y. Feb. 19, 1999) (expert directed to disclose content of conversation with defense counsel to extent considered by expert in forming opinions to be expressed at trial). Because

EchoMail violated the mandatory expert disclosure requirements delineated in Rule 26(a)(2)(B) – and because, in any event, the conversations upon which Dr. Jackson relies are inherently unverifiable and undiscoverable – Fed. R. Civ. P. 37(c) precludes the use of Dr. Jackson's Report or testimony at trial.  *See Ortiz-Lopez*, 248 F.3d at 35 (affirming exclusion of plaintiffs' expert testimony because of failure to provide information as required by Rule 26(a)(2)(B)).

## CONCLUSION

For the foregoing reasons, AXP respectfully requests that the Court grant its Motion in Limine, exclude Dr. Jackson's Report and proposed testimony at trial, and award any further relief that the Court deems appropriate and just.

    Respectfully submitted,

    AMERICAN EXPRESS CO.
    By its counsel,


    /s/ John F. Farraher, Jr.
    John F. Farraher, Jr. (BBO # 568194)
    GREENBERG TRAURIG, LLP
    One International Place, 20th Floor
    Boston, MA 02110
    (617) 310-6000

       -and-

    Louis Smith
    GREENBERG TRAURIG, LLP
    200 Park Avenue
    Florham Park, NJ 07932
    (973) 360-7900

Dated:  November 29, 2007

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on November 29, 2007.

                                                         /s/ John F. Farraher, Jr.