UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
ECHOMAIL, INC.,                     )
                                    )   Civil Action No. 05-11318 (NMG)
            Plaintiff,              )
                                    )
v.                                  )
                                    )
AMERICAN EXPRESS CO. and            )
IBM CORP.,                          )
                                    )
            Defendants.             )
_____)

**DEFENDANT AMERICAN EXPRESS COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE ANY EVIDENCE OR ARGUMENT REGARDING ALLEGED CONTRACT DAMAGES PURPORTEDLY SUFFERED BY <u>ECHOMAIL AFTER DECEMBER 31, 2005</u>**

Defendant American Express Co. ("AXP") hereby submits this Memorandum of Law in Support of Its Motion in Limine to preclude Plaintiff EchoMail, Inc. ("EchoMail") from introducing any evidence or argument concerning any alleged contract damages that EchoMail purportedly suffered after December 31, 2005. Per its terms, the agreement at issue expired on December 31, 2005, and under the circumstances presented here, EchoMail cannot seek damages beyond that period based on a renewal provision.

**I.  WHILE THE PARTIES DISPUTE THE MANNER IN WHICH THE STAND ALONE AGREEMENT TERMINATED, THERE IS NO DISPUTE THAT THE AGREEMENT HAD TERMINATED BY JUNE 2005.**

EchoMail processed inbound e-mails for AXP pursuant to a Stand Alone Agreement. In this litigation, EchoMail argues that AXP terminated the Stand Alone Agreement during the May 26, 2005 telephone call between AXP employee Ms. Panikar and certain EchoMail personnel. <u>See</u> EchoMail's Response to AXP's Rule 56.1 Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment, ¶ 135 (asserting in "additional statements of

material fact" that "[a]ll of the EchoMail representatives on the call understood that Panikar, who they were informed was responsible for AXP's relationship with EchoMail, had terminated the Stand Alone Agreement and ended AXP's business relationship with EchoMail.").

Prior to the litigation, on May 26, 2005, Mr. Shiva of EchoMail sent a letter to AXP's CEO with the subject line "Termination Notice," in which he stated: "I am writing this letter to notify you of our decision to terminate our relationship with American Express . . . ." EchoMail sent another letter the following day in which it referred to the May 26, 2005 letter as a "letter of termination" and stated that "EchoMail has been forced to terminate the relationship." *See* Declaration of Colleen Dechon in Support of Motion for Summary Judgment dated June 20, 2007 ("Dechon Decl."), Exs. C & D. At 5:00 p.m. on May 27, 2005, EchoMail stopped processing e-mails for AXP. *See* Rule 56.1 Statement of Undisputed Material Facts in Support of American Express Company's Motion for Summary Judgment, ¶ 75.

AXP considered EchoMail's failure to perform to be a breach of the Stand Alone Agreement. "The New York doctrine of election of remedies provides that upon learning of a breach, a party must choose between terminating the contract and continuing performance." *RBFC One, LLC v. Zeeks, Inc.*, 367 F. Supp. 2d 604, 610 (S.D.N.Y. 2005) (quoting *Medinol Ltd. v. Boston Scientific Corp.*, 346 F. Supp. 2d 575, 620 (S.D.N.Y. 2004)); *see also Lazard Freres & Co. v. Crown Sterling Mgmt., Inc.*, 901 F. Supp. 133, 136 (S.D.N.Y. 1995) ("'the power to terminate a continuing contract because of a particular breach of that contract is a power of election'") (quoting *Apex Pool Equip. Corp. v. Lee*, 419 F.2d 556, 562 (2d Cir. 1969)).

In this case, when AXP learned that EchoMail had stopped performing services, it elected to terminate the Stand Alone Agreement. In response to EchoMail's cessation of performance, on May 31, 2005, AXP sent a letter to EchoMail stating that AXP "consider[s] EchoMail in

2

breach of the Agreement due to the discontinuance . . . by EchoMail of the services it was required to perform under the Agreement." Dechon Decl., Ex. E.

AXP did not demand that EchoMail resume performing under the Stand Alone Agreement, but instead recognized that the parties' relationship was over and the Stand Alone Agreement was terminated by demanding that EchoMail return AXP's confidential information and computer hardware (which was needed to perform the services for AXP), and insisting that EchoMail return monies that AXP had prepaid to EchoMail. *Id.* AXP further instructed EchoMail to immediately remove any reference to AXP from EchoMail's marketing materials. *Id.* Thus, AXP's May 31, 2005 letter plainly indicated that AXP considered the parties' relationship and the Stand Alone Agreement to be terminated.

While the Court concluded that there are "genuine issues of material fact concerning exactly when and how the Agreement was terminated," (*see* October 18, 2007 Memorandum and Order, Docket No. 89 at 18 (the "October 18, 2007 Order")), by June 1, 2005 both parties recognized that the relationship between the parties had ended and considered the Stand Alone Agreement to be terminated. Moreover, this Court *expressly* acknowledged the termination of the relationship in its October 18, 2007 Order, declaring that "EchoMail's relationship with AmEx ended in May, 2005 . . . ." *See* October 18, 2007 Order at 17. Indeed, in June 2005, litigation between the parties had been initiated.

II. **BECAUSE THE PARTIES CONSIDERED THE AGREEMENT TO BE TERMINATED BY JUNE 2005, ECHOMAIL SHOULD BE PRECLUDED FROM INTRODUCING ANY EVIDENCE OF DAMAGES IT PURPORTEDLY SUFFERED AFTER DECEMBER 31, 2005.**

The August 20, 2004 Amendment to the Stand Alone Agreement modifies the "effective term" of the agreement. It provides, in relevant part:

3

> Effective Term of the Master Agreement shall be effective from July 15, 2004 until December 31, 2005. The Master Agreement shall automatically renew for an additional 12 month term from January 1, 2006 to December 31, 2006 unless [AXP] terminates by written notice to [EchoMail] at least sixty (60) days prior to December 31, 2005. If the Master Agreement has been renewed for a second term, it shall automatically renew for a third term from January 1, 2007 to December 2007 unless [AXP] terminates by written notice to [EchoMail] at least sixty (60) days prior to December 31, 2006.

Dechon Decl., Ex. A. The Amendment thus extends the effective term of the Stand Alone Agreement to December 31, 2005. It also provides that the Stand Alone Agreement will automatically renew for an additional twelve month period unless AXP gives written notice to EchoMail, at least sixty days prior to December 31, 2005, that it intends to terminate the contract.

In light of the above, EchoMail should be precluded from introducing any evidence or argument regarding damages it purportedly suffered after December 31, 2005. Where a party to a contract with an automatic renewal provision demonstrates an intent to terminate the relationship, "damages may be awarded only for the initial contract period and not any of the renewal periods." *See Royal Ins. Co. of Am. v. Simpson*, 1992 WL 78803, at *2 (D. Mass. April 3, 1992) (applying New York law and citing *Custen v. Robison*, 180 A.D. 384, 387 (N.Y. App. Div. 1917)). Indeed, courts regularly limit an award of damages to preclude recovery for renewal periods. *See, e.g., Missert v. Rochester Tech. Group*, 254 A.D.2d 787, 787 (N.Y. App. Div. 1998) (modifying trial court order by dismissing claim for damages arising after the expiration of the initial three-year term of the agreement); *Custen*, 180 A.D. at 387 (deducting damages for renewal period from jury award); *see also Royal Ins. Co.*, 1992 WL 78803, at *2 (limiting damages to initial contract period only).

While the circumstances make clear that both parties considered the Stand Alone Agreement terminated by June 2005, if this Court determines that AXP was required to give

4

notice of termination under the Amendment, its May 31, 2005 letter satisfies that requirement. In any event, it is well-settled under New York law that where a contract provides for automatic renewal unless one party provides notice that it does not intend to renew, the non-renewing party's *conduct* may serve as notice of its intention not to renew the contract. *See, e.g., Deutsch v. Health Ins. Plan of Greater N.Y.*, 751 F.2d 59, 63-64 (2d Cir. 1984) ("in the face of actual knowledge by plaintiff of the defendant's . . . intent to exercise its option not to renew, automatic renewal is not triggered notwithstanding defendant's failure to comply literally with the procedure for notification prescribed in the contract"); *see also Missert*, 254 A.D.2d at 787 ("plaintiff had notice from defendant's refusal to pay him during the initial term and the failure of the settlement negotiations that defendant did not intend to extend the agreement"); *Custen*, 180 A.D. at 387 (defendants "refused to go forward with its [contractual] performances, thereby giving the plaintiff notice, not alone that they did not intend to extend it, but they did not intend to perform it until its expiration").

Here, the parties were in full scale litigation by June 2005, and AXP had asserted a breach of contract claim against EchoMail in July 2005. EchoMail stopped performing on May 27, 2005, and never started performing again, instead contending that AXP had terminated the Stand Alone Agreement. Because both parties recognized – and, in its October 18, 2007 Order, this Court expressly acknowledged – that by June 2005 the relationship between the parties and the Stand Alone Agreement had been terminated, any evidence of damages purportedly suffered by EchoMail after December 31, 2005 is not relevant and, accordingly, should be excluded.

**CONCLUSION**

For the foregoing reasons, AXP respectfully requests that the Court grant its motion in limine to exclude any contract damages that EchoMail purportedly suffered after December 31, 2005, and any further relief that the Court deems appropriate and just.

                                     Respectfully submitted,

                                     AMERICAN EXPRESS CO.
                                     By its counsel,

                                     /s/ John F. Farraher, Jr.
                                     John F. Farraher, Jr. (BBO # 568194)
                                     GREENBERG TRAURIG, LLP
                                     One International Place, 20th Floor
                                     Boston, MA 02110
                                     (617) 310-6000

                                           -and-

                                     Louis Smith
                                     GREENBERG TRAURIG, LLP
                                     200 Park Avenue
                                     Florham Park, NJ 07932
                                     (973) 360-7900

Dated: November 29, 2007


**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on November 29, 2007.

                                                     /s/ John F. Farraher, Jr.