# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ECHOMAIL, INC.,

                    Plaintiff,                         CIVIL ACTION NO. 05-11318

v.

AMERICAN EXPRESS CO. and
IBM CORP.,

                    Defendants.

## NOTICE OF DEPOSITION

To:    Alan D. Rose, Jr., Esq.
       Rose & Associates
       29 Commonwealth Avenue, 6th Floor
       Boston, Massachusetts  20116

       Thomas G. Rafferty, Esq.
       Cravath, Swaine & Moore LLP
       World Wide Plaza
       825 Eighth Avenue
       New York, New York 10019

       Stephen D. Poss, P.C.
       Goodwin Procter LLP
       Exchange Place
       Boston, Massachusetts  02109

**PLEASE TAKE NOTICE** that, in accordance with Federal Rules of Civil Procedure 26 and 30, at 10:00 a.m. on July 13, 2006, at the offices of Greenberg Traurig, LLP, One International Plaza, Boston, Massachusetts 02210, Defendant American Express Company, by its attorneys, will take the deposition upon oral examination of Hariharan Subramanian of Plaintiff. The deposition will be taken pursuant to the Federal Rules of Civil Procedure, before a notary

public or other officer authorized by law to administer oaths. The deposition will continue from day to day until completed. You are invited to attend and cross-examine. The testimony of the witness may be recorded by both stenographic and sound-and-visual means.

AMERICAN EXPRESS COMPANY,
By its attorneys,

Louis Smith
Greenberg Traurig, LLP
200 Park Avenue
P.O. Box 677
Florham Park, NJ  07932
Tel:  (973) 360-7915
Fax:  (973) 301-8410

DATED:  June 12, 2006

## CERTIFICATE OF SERVICE

I, Louis Smith, hereby certify that on June 12, 2006, I caused a copy of the foregoing to be served upon all counsel of record.

_____
Louis Smith

nj-fs1\88218v01

# EXHIBIT B

Sonu Mathew Abraham                                    10/11/2006

45

1    which it was originally planned was not the way it

2    got completed.

3        Q.  What changed?

4        A.  A lot of the expectations -- I cannot talk

5    in detail about it, because I would be guessing.

6    So, no, I cannot talk in great detail about it.  I

7    know that 8.1 was not completed.

8        Q.  Was there ever any intention to implement

9    8.1 for any customer other than American Express?

10       A.  Yes, there was.

11       Q.  Who would know more about why 8.1 has not

12   yet been completed?

13       A.  That would be Hariharan.

14       Q.  Who is Hariharan?

15       A.  He leads the development team.

16       Q.  For which company?

17       A.  He works for Millennium Software

18   Productions currently in India.

19       Q.  Is he currently an EchoMail employee?

20       A.  He is not currently an EchoMail employee.

21       Q.  He is currently in India?

22       A.  He is currently in India.

23       Q.  Are you aware that American Express

24   requested that his deposition be taken in connection

Sonu Mathew Abraham                                    10/11/2006

46

1    with this case?

2        MR. ROSE:  Objection.

3    A.  I cannot remember whether it was requested.

4    Q.  Do you have an understanding that he is

5    incapable of traveling to the United States at this

6    point in time?

7        MR. ROSE:  Objection.

8    A.  Yes, I'm aware that he is incapable of

9    traveling at this point in time.

10   Q.  What precludes him from coming to the

11   United States?

12   A.  He needs to obtain travel documentation

13   that takes time to go through the immigration

14   process.

15   Q.  And he doesn't have that information

16   completed at this time; is that your understanding?

17   A.  Can you repeat?

18   Q.  The documentation that he needs to travel

19   has not been completed for him at this time?

20       MR. ROSE:  Objection.

21   A.  That is correct.  That's my knowledge.

22   Q.  Do you know if he made any efforts to try

23   to obtain travel documentation to come to the United

24   States to give testimony in connection with this

Sonu Mathew Abraham                                    10/11/2006

47

1    case?

2        A.  I do not know about that.

3        Q.  Was he ever an employee of EchoMail?

4        A.  He was an employee of EchoMail.

5        Q.  When did his employment with EchoMail

6    cease?

7        A.  I cannot remember the period.

8        Q.  Was it within the last year?

9        A.  Yes.

10       Q.  Was it within the last six months?

11       A.  It was not six months.  It was towards the

12   end of 2005.

13       Q.  What other customers of EchoMail were going

14   to use Version 8.1 of its product?

15       A.  Eventually all customers of EchoMail who

16   uses e-mail management software would have Version

17   8.1.

18       Q.  What is the most updated version that is

19   deployed for any customer of EchoMail?

20       A.  7.4.  I will not be able to tell you the

21   exact subversion number.  It is 7.4.X.

22       Q.  Was 7.4 ever deployed for American Express?

23       A.  7.4 was not deployed for American Express.

24       Q.  What was the most updated version that was

# EXHIBIT C

EchoMail, Inc.

701 Concord Avenue
Cambridge, MA 02138
(617) 354-8585
www.echomail.com

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 1/10/2007 | 6450 |

| BILL TO |
|---------|
| American Express<br>200 Vesey Street<br>01-19-05<br>New york, NY 10285 |

| Contract No. | TERMS | DUE DATE | REP |
|--------------|-------|----------|-----|
| Schedule RR | Due on receipt | 1/10/2007 | HSE |

| ITEM | DESCRIPTION | QTY | RATE | Expiration Date | AMOUNT |
|------|-------------|-----|------|-----------------|--------|
| CC-PS-CONSULTI... | Generation of Amex data stored in EchoMail in flat file format | 483 | 250.00 | | 120,750.00 |

| | **Total** | |
|--|-----------|--|
| | | $120,750.00 |

More detailed descriptions of the Services are contained in
the contract and/or Scope of Work for each service, which
are incorporated herein and made a part hereof.

Professional Services to generate flat file of Amex data stored at EchoMail
29-Dec-06
Professional Services Invoice Back up

| Person | Hours |
|---|---|
| Rob Zierten | 15 |
| Hariharan Subramanian | 22 |
| Sonu Abraham | 10 |
| Gene Deans | 44 |
| Roman Zavolly | 25 |
| Thuya Maung | 56 |
| William Cook | 31 |
| Subramaniam Ramasubramaniam | 34 |
| Prasad Jayakumar | 30 |
| Nananeetha Krishnan | 57 |
| S. Bharaneetharan | 74 |
| V. S. Kannan | 54 |
| B. Srinivasan | 31 |
| Total | 483 hours |

EXHIBIT D

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

---

## FORM 10-K

---

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF**
**THE SECURITIES EXCHANGE ACT OF 1934**
**For the fiscal year ended December 31, 2006**

### OR

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF**
**THE SECURITIES EXCHANGE ACT OF 1934**
**For the transition period from _____ to _____**

### Commission File No. 1-7657

# American Express Company
#### (Exact name of registrant as specified in its charter)

| | |
|---|---|
| **New York** | **13-4922250** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

| | |
|---|---|
| **World Financial Center** | |
| **200 Vesey Street** | |
| **New York, New York** | **10285** |
| (Address of principal executive offices) | (Zip Code) |

### Registrant's telephone number, including area code: (212) 640-2000

### Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common Shares (par value $0.20 per Share) | New York Stock Exchange |

### Securities registered pursuant to Section 12(g) of the Act:  None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.  Yes  √  No ___

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.  Yes ___ No  √

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports) and (2) has been subject to such filing requirements for the past 90 days.  Yes  √  No ___

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ___

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer or a non-accelerated filer.  See definition of "accelerated filer" and "large accelerated filer" in Rule 12b-2 of the Exchange Act.
Large accelerated filer  √          Accelerated filer ___          Non-accelerated filer ___

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act).  Yes ___ No  √

As of June 30, 2006, the aggregate market value of the registrant's voting shares held by non-affiliates of the registrant was approximately $63.0 billion based on the closing sale price as reported on the New York Stock Exchange.

As of February 22, 2007, there were 1,192,339,538 common shares of the registrant outstanding.

### Documents Incorporated By Reference
Parts I, II and IV:  Portions of Registrant's 2006 Annual Report to Shareholders.
Part III:  Portions of Registrant's Proxy Statement to be filed with the Securities and Exchange Commission in connection with the Annual Meeting of Shareholders to be held on April 23, 2007.

# TABLE OF CONTENTS

**Form 10-K**
**Item Number**

**PART I**

1. Business .............................................................................................................. 1
   Introduction.................................................................................................... 1
   Global Network & Merchant Services........................................................... 4
   U.S. Card Services ....................................................................................... 15
   International Card & Global Commercial Services ...................................... 27
   Corporate & Other ....................................................................................... 37
   Foreign Operations....................................................................................... 40
   Segment Information and Classes of Similar Services ................................. 41
   Executive Officers of the Company.............................................................. 41
   Employees..................................................................................................... 42
1A. Risk Factors...................................................................................................... 43
1B. Unresolved Staff Comments ............................................................................ 52
2. Properties............................................................................................................ 52
3. Legal Proceedings .............................................................................................. 53
4. Submission of Matters to a Vote of Security Holders........................................ 60

**PART II**

5. Market for Company's Common Equity, Related Stockholder Matters and Issuer
   Purchases of Equity Securities ..................................................................... 61
6. Selected Financial Data...................................................................................... 62
7. Management's Discussion and Analysis of Financial Condition and Results of
   Operation....................................................................................................... 63
7A. Quantitative and Qualitative Disclosures about Market Risk ........................... 63
8. Financial Statements and Supplementary Data.................................................. 63
9. Changes in and Disagreements with Accountants on Accounting and Financial
   Disclosure...................................................................................................... 63
9A. Controls and Procedures ................................................................................... 63
9B. Other Information............................................................................................... 64

**PART III**

10. Directors, Executive Officers and Corporate Governance................................. 64
11. Executive Compensation.................................................................................... 64
12. Security Ownership of Certain Beneficial Owners and Management and Related
    Stockholder Matters ..................................................................................... 64
13. Certain Relationships and Related Transactions, and Director Independence...... 64
14. Principal Accounting Fees and Services ........................................................... 65

**PART IV**

15. Exhibits and Financial Statement Schedules..................................................... 65
    Signatures...................................................................................................... 66
    Index to Financial Statements ...................................................................... F-1
    Exhibit Index................................................................................................. E-1

other than the currency in which they are billed; the sale in one currency of a Travelers Cheque denominated in a second currency; foreign exchange positions held by AEB as a consequence of its client-related foreign exchange trading operations; and, in most instances, investments in foreign operations. These risks, unless properly monitored and managed, could have an adverse effect on our operations. For more information on how we manage risk relating to foreign exchange, see "Risk Management – Market Risk Management Process" on pages 51-52 of our 2006 Annual Report to Shareholders, which information is incorporated herein by reference.

## SEGMENT INFORMATION AND CLASSES OF SIMILAR SERVICES

You can find information regarding the Company's reportable operating segments, geographic operations and classes of similar services in Note 19 to the Consolidated Financial Statements of the Company, which appears on pages 106-108 of the Company's 2006 Annual Report to Shareholders, which Note is incorporated herein by reference.

## EXECUTIVE OFFICERS OF THE COMPANY

Set forth below is a list of all our executive officers as of March 1, 2007. None of our executive officers has any family relationship with any other executive officer, and none of our executive officers became an officer pursuant to any arrangement or understanding with any other person. Each executive officer has been elected to serve until the next annual election of officers or until his or her successor is elected and qualified. Each officer's age is indicated by the number in parentheses next to his or her name.

KENNETH I. CHENAULT -        Chairman and Chief Executive Officer;
                             Chairman and Chief Executive Officer, American Express
                             Travel Related Services Company, Inc.

Mr. Chenault (55) has been Chairman since April 2001 and Chief Executive Officer since January 2001. Prior thereto he had been President and Chief Operating Officer of the Company since February 1997. He has also been Chairman of TRS since April 2001 and Chief Executive Officer of TRS since February 1997.

L. KEVIN COX -              Executive Vice President, Human Resources

Mr. Cox (43) has been Executive Vice President, Human Resources of the Company since April 2005. Prior thereto he had been Executive Vice President of The Pepsi Bottling Group since September 2004. Prior thereto, he had been Senior Vice President, Human Resources of such company since March 1999.

EDWARD P. GILLIGAN -        Group President, American Express International & Global
                           Corporate Services

Mr. Gilligan (47) has been Group President, American Express International & Global Corporate Services since July 2005. Prior thereto, he had been Group President, Global

Corporate Services since June 2000 and Group President, Global Corporate Services & International Payments, since July 2003.

JOHN D. HAYES -                     Executive Vice President, Global Advertising and Brand
                                   Management and Chief Marketing Officer

    Mr. Hayes (52) has been Executive Vice President, Global Advertising and Brand Management since May 1995 and Chief Marketing Officer of the Company since August 2003.

DANIEL T. HENRY -                   Executive Vice President and acting Chief Financial
                                   Officer

    Mr. Henry (57) has been Executive Vice President and acting Chief Financial Officer of the Company since February 2007.  Prior thereto, he had been Executive Vice President and Chief Financial Officer, U.S. Consumer, Small Business and Merchant Services since October 2005 and Executive Vice President and Chief Financial Officer, U.S. Consumer and Small Business Services since August 2000.

ALFRED F. KELLY, JR. -             Group President, Consumer, Small Business and Merchant
                                   Services

    Mr. Kelly (48) has been Group President, Consumer, Small Business and Merchant Services since October 2005.  Prior thereto, he had been Group President, U.S. Consumer and Small Business Services since June 2000.

LOUISE M. PARENT -                 Executive Vice President and General Counsel

    Ms. Parent (56) has been Executive Vice President and General Counsel since May 1993.

THOMAS SCHICK -                     Executive Vice President, Corporate Affairs and
                                   Communications

    Mr. Schick (60) has been Executive Vice President, Corporate Affairs and Communications since March 1993.

STEPHEN SQUERI -                    Executive Vice President and Chief Information Officer

    Mr. Squeri (47) has been Executive Vice President and Chief Information Officer since May 2005.  Prior thereto, he had been President, Global Commercial Card – Global Corporate Services since January 2002 and President, Establishment Services – United States and Canada, from July 2000 through December 2001.

## **EMPLOYEES**

    We had approximately 65,400 employees on December 31, 2006.

EXHIBIT E

**Farraher, John F. (Shld-Bos-LT)**

| | |
|---|---|
| **From:** | Lisa Tenerowicz [lat@rose-law.net] |
| **Sent:** | Tuesday, October 30, 2007 8:32 AM |
| **To:** | Farraher, John F. (Shld-Bos-LT) |
| **Subject:** | RE: Thoughts? |

Jay,

This looks good to me – fire away.

-Lisa

Lisa A. Tenerowicz
Rose, Chinitz & Rose
29 Commonwealth Avenue
Boston, MA 02116
Tel: (617) 536-0040
Fax: (617) 536-4400

**From:** FARRAHERJ@GTLAW.com [mailto:FARRAHERJ@GTLAW.com]
**Sent:** Tuesday, October 30, 2007 10:29 AM
**To:** lat@rose-law.net
**Subject:** Thoughts?

Good morning Craig:

Based upon the Court's 9/18/07 procedural order, the parties' understanding of the pre-trial schedule is as follows:

**11/29** - Rule 26(a)(3) witness list/designation of exhibits, designation of testimony to be offered via deposition, motions in limine, voire dire;

**12/6** - Opposition to anything filed on 11/29;
**12/13** - Final pre-trial conference; and
**1/7** - Trial starts.
In light of the 9/18 order, and considering the substantial briefing that has already occurred in this case, we assume, but would like to confirm, that the parties will <u>not</u> be required to prepare and file a traditional final pre-trial memorandum addressing the items set forth in Local Rule 16.5(D)(1) through (9) (e.g. summary of the evidence to be offered by plaintiff and defendant, a recitation of facts established by pleadings, identification of contested issues of fact, etc.). Could you please confirm if our understanding is correct? Thanks very much.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

12/5/2007

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@gtlaw.com.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ECHOMAIL, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 05-11318-NMG |
| AMERICAN EXPRESS CO. AND | ) | |
| INTERNATIONAL BUSINESS | ) | |
| MACHINES CORP., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT AMERICAN EXPRESS COMPANY'S OBJECTIONS TO THE
WITNESS LIST OF PLAINTIFF ECHOMAIL, INC.**

Defendant American Express Company ("AXP") hereby submits the following objections to the witness list filed by Plaintiff EchoMail, Inc. ("EchoMail"):

A.     Hariharan Subramanian

AXP objects to EchoMail calling Mr. Subramanian at trial.  AXP served a deposition notice to take Mr. Subramanian's deposition.  Attached  hereto as Exhibit A is a true and correct copy of that deposition notice.  EchoMail did not produce Mr. Subramanian for a deposition, but contended that he was no longer an employee of EchoMail and resided in India, and could not travel to the United States on account of a problem with his visa.  Attached hereto as Exhibit B is an excerpt of the deposition of Mr. Abraham, EchoMail's President, addressing Mr. Subramanian and AXP's desire to depose him.

Despite the fact that EchoMail contended that it lacked control over Mr. Subramanian, it seeks to recover costs purportedly incurred for work that Mr. Subramanian allegedly performed

relating to extracting AXP's confidential information in response to this Court's Summary Judgment ruling on AXP's replevin claim. Attached hereto as Exhibit C is an invoice and related spreadsheet which includes time for Mr. Subramanian, which EchoMail just produced on December 3, 2007, related to monies EchoMail seeks to collect for services required to extract AXP's confidential information as ordered by this Court.

EchoMail's inclusion of Mr. Subramanian on its witness list suggests that Mr. Subramanian can now travel to the United States, but EchoMail never informed AXP of this fact and never made Mr. Subramanian available for a deposition at any time in connection with this matter. As such, AXP objects to EchoMail calling Mr. Subramanian as a witness at trial. *See Johnson v. J.B. Hunt Transp., Inc.*, 280 F.3d 1125, 1130-32 (7th Cir. 2002) (affirming district court's decision to bar testimony of two witnesses at trial who defendant refused to produce for depositions).

B.     Current AXP Employees Angela Ramsammy, Greg Daniel, Colleen Dechon, Reena Panikar, and Benjamin Hung

EchoMail has not served trial subpoenas directed to AXP employees Angela Ramsammy, Greg Daniel, Colleen Dechon, Reena Panikar, and Benjamin Hung. To the extent EchoMail is taking the position that service of its witness list is effectively service of a trial subpoena directed to AXP, its position should be rejected because these AXP employees are not within the subpoena range of this Court and AXP is not obligated to produce them in connection with EchoMail's case.

Pursuant to Fed. R. Civ. P. 45(b)(2), a trial subpoena may be served anywhere "within the district of the issuing court [or] . . . outside that district but within 100 miles of the place specified" for the trial. Rule 45(b)(2) is subject to the provisions of Rule 45(c)(3)(A)(ii). *See* Fed. R. Civ. P. 45(b)(2). Rule 45(c)(3)(A)(ii) provides, in relevant part, that "the issuing court

2

must quash or modify a subpoena that . . . requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person." *See also Reiser (UK) Ltd. v. Bryant*, 494 F. Supp. 2d 28, 32-33 (D. Mass. 2007) ("It is to be recalled that . . . a witness cannot be subpoenaed to appear to testify in a civil case for trial if he or she does not reside in the state in which the trial is held or within 100 miles of the place of trial.") (citing Fed. R. Civ. P. 45(b)(2) and (c)(3)(A)(ii)).

Significantly, Rule 45(c)(3)(A)(ii) does not alter the "longstanding geographic limitations" on the reach of a federal district court's subpoena power. *See Jamsports & Entm't, LLC v. Paradama Prods., Inc.*, 2005 WL 14917, at *1-2 (N.D. Ill. Jan. 3, 2005). Rule 45(b)(2) defines a district court's subpoena power; Rule 45(c)(3)(A)(ii) merely grants a district court the authority to quash a subpoena that is *within* the court's subpoena power. *See id.* Thus, officers of parties who are more than 100 miles from the place of the trial are not subject to the subpoena power of the trial court. *See id.* (granting motion to quash trial subpoena served on vice president and chief financial officer who lived and worked more than 100 miles from the place of the trial); *Johnson v. Land O'Lakes, Inc.*, 181 F.R.D. 388, 396-97 (N.D. Iowa 1998) (denying plaintiffs' motion *in limine* which sought a ruling that a vice president of the defendant company who lived and worked more than 100 miles from the place of trial was subject to the subpoena power of the court); *see also Reiser*, 494 F. Supp. 2d at 32-33 (noting that defendant company has control over its officers, directors and employees "and if it *wishes* to have them testify at trial, the *defendant* can bring them to Boston.") (emphasis added).

Here, EchoMail has listed four witnesses employed by AXP that it expects to call at trial: Ms. Ramsammy, Mr. Daniel, Ms. Dechon, and Ms. Panikar; and one witness it may call at trial, Mr. Hung. As EchoMail's own witness list reflects, none of these witnesses resides, is

employed, or regularly transacts business in person within 100 miles of Boston, Massachusetts. Indeed, while each of these witnesses was deposed in this case, none of those depositions took place in Massachusetts. As a result, these witnesses are not required to appear as witnesses for EchoMail's case. *See* Fed. R. Civ. P. 45(b)(2), (c)(3)(A)(ii).

Further, even if this Court determined that EchoMail could compel "officers" of AXP to testify, these witnesses are not officers of AXP for purposes of Fed. R. Civ. P. 45. *See* excerpt of AXP's most recent Form 10-K, attached hereto as Exhibit D, Part I.1 (listing "Executive Officers of the Company," which does not include any AXP personnel on EchoMail's witness list). Therefore, EchoMail cannot compel Ms. Ramsammy, Mr. Daniel, Ms. Dechon, Ms. Panikar, or Mr. Hung to testify at trial. *See Jamsports*, 2005 WL 14917, at *1-2; *Johnson*, 181 F.R.D. at 396-97; s*ee also Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 10 (1st Cir. 1985) ("[A] court cannot force the appearance at a hearing or trial of a witness beyond the court's subpoena powers."); *Reiser*, 494 F. Supp. 2d at 32-33; *Elgabri v. Lekas*, 964 F.2d 1255, 1259-60 (1st Cir. 1992) (affirming trial court's refusal to allow plaintiff to call defendants as witnesses during plaintiff's case-in-chief, and holding that "plaintiff did not have an 'unfettered right' to call defendants during his case-in-chief.").

In sum, while AXP may call some or all of these witnesses to support its claims or defenses, EchoMail cannot compel their attendance as part of its case.

C.    <u>Professor Daniel L. Jackson</u>

For the reasons expressed in its Motion In Limine to Strike the Report and Preclude the Testimony of Daniel Jackson, AXP objects to Dr. Jackson testifying at trial.

D.    <u>Former AXP Employee Miguel Rodriguez</u>

Mr. Rodriguez is no longer employed by AXP, and therefore will not be produced by AXP at trial.  It is also believed that Mr. Rodriguez resides outside of this Court's subpoena power and, for the reasons stated above, his attendance at trial could not be compelled.

E.    <u>Andrea Poletis, Todd Seager, and Stephen Gibbons</u>

While EchoMail indicates that it may introduce deposition testimony from Ms. Poletis and Messrs. Seager and Gibbons, it failed to timely designate the *specific testimony* (by page and line number or otherwise) that it might offer.  As the deadline has passed for such designations, AXP objects to EchoMail offering any deposition testimony from Ms. Poletis and Messrs. Seager and Gibbons into evidence.

Consistent with their obligations under Rule 26(a)(3), the parties agreed, in writing, that they would designate any *testimony* that might be offered through deposition by Thursday, November 29, 2007.  *See* October 30, 2007 e-mail attached hereto as Exhibit E (parties agree to make "designations of *testimony* to be offered via deposition" by November 29, 2007 (emphasis added)).  In accordance with this agreement, on November 29, 2007, AXP designated the deposition testimony, by page and line number, of the witnesses whose testimony may be offered through deposition.  The purpose of designating such testimony in advance of the pre-trial conference was to afford both sides the opportunity to evaluate the other side's proffered testimony, counter-designate testimony, assert relevant objections, and efficiently raise any issues related to the proffered testimony with the Court at the final pre-trial conference scheduled for December 13, 2007.  Because EchoMail has not honored the terms of the parties' agreement

or the fundamental purposes of Rule 26(a)(3),[1] EchoMail should be foreclosed from offering any testimony taken from the deposition transcripts of Ms. Poletis, Mr. Seeger, or Mr. Gibbons.  *See Wyckoff v. Metro. Life Ins. Co.*, 2006 WL 3302666, at *1 (W.D. Pa. Nov. 13, 2006) (precluding plaintiff from presenting deposition testimony that he failed to timely designate).[2]

Further, AXP has moved *in limine* to preclude EchoMail from introducing any testimony or evidence at trial relating to IBM or other issues that were already resolved through summary judgment.  *See* Docket No. 103.  Accordingly, and for the reasons set forth in the earlier filed motions in limine, AXP objects to Ms. Poletis and Messrs. Seeger and Gibbons testifying at trial.

AMERICAN EXPRESS CO.

By its attorneys,


 /s/  John F. Farraher, Jr.
John F. Farraher, Jr. (BBO #568194)
Zachary C. Kleinsasser (BBO #664291)
Greenberg Traurig, LLP
One International Place
Boston, MA  02110
Tel: (617) 310-6000

and

Louis Smith
Greenberg Traurig, LLP
200 Park Avenue
Florham Park, NJ 07932
Tel: (973) 360-7900

Dated: December 7, 2007

---

[1] The "core concepts" of the disclosure requirements of Fed. R. Civ. P 26(a)(3) obligate each party to "disclose the witnesses that may testify at trial, the *deposition testimony* that may be offered at trial, and the exhibits that may be offered at trial."  *See* Steven Baicker-McKee et al., Federal Civil Rules Handbook 647 (2008) (emphasis added).
[2] For these same reasons, the abject failure to designate the deposition *testimony* of any AXP witness (or, for that matter, to designate any AXP *witness* whose testimony may be offered via deposition) precludes EchoMail from offering the testimony of any AXP witness through deposition transcripts.  *See Wyckoff*, 2006 WL 3302666, at *1.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on December 7, 2007.

<u>/s/ John F. Farraher, Jr.</u>