UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ECHOMAIL, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AMERICAN EXPRESS CO. )<br>and IBM CORP., )<br>)<br>Defendants. )<br>) | Civil Action No. 05-11318-NMG |

**PLAINTIFF ECHOMAIL'S OPPOSITION TO AMERICAN EXPRESS COMPANY'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OR ARGUMENT THAT THE TECHNOLOGY EVALUATION QUESTIONNAIRE CONTAINS TRADE SECRETS OR CONFIDENTIAL INFORMATION**

American Express Company's ("AmEx") motion *in limine* to preclude evidence or argument that that Technology Evaluation Questionnaire ("TEQ") contains trade secrets or confidential information should be denied. The sole basis for this motion is the fact that EchoMail inadvertently filed the TEQ unsealed with the Court in November 2006. From this single, isolated action, AmEx urges the Court to disregard all of EchoMail's other efforts to protect the secrecy of the information in the TEQ and preclude EchoMail from presenting evidence or otherwise arguing that the TEQ contains confidential or trade secret information.

AmEx's motion should be denied for several reasons. First, AmEx has ignored the basic tenet that secrecy is a relative, and not an absolute concept, as well as the fact that EchoMail has taken reasonable steps to preserve the secrecy of the information in the TEQ. Second, AmEx has not demonstrated that the information in the TEQ is "generally known" in the industry. Finally, AmEx has failed to demonstrate that a document that is inadvertently filed unsealed with the Court automatically loses its trade secret status. In fact, courts consider an unsealed filing only

as a single, non-dispostive factor in a multi-factor, fact intensive inquiry. Accordingly, EchoMail should be permitted to present evidence and offer arguments that the TEQ contains trade secrets and confidential information and AmEx's motion should be denied. Finally, the issues in this case relate to what AmEx did with what AmEx itself described as EchoMail's confidential and proprietary information leading up to, during, and close on the heals of the May 2005 deep dive Architecture Review, not what happened to the TEQ much later, during the course of litigation.

## ARGUMENT

I. **ECHOMAIL SHOULD BE PERMITTED TO OFFER EVIDENCE THAT THE TEQ CONTAINS CONFIDENTIAL, PROPRIETARY, TRADE SECRET INFORMATION.**

   A.   **EchoMail Has Taken Reasonable Steps to Preserve the Secrecy of the TEQ.**

Secrecy is a relative and not an absolute concept, and a party is required to take reasonable security precautions to preserve trade secret status. Picker Intern. Corp. v. Imaging Equip. Services, Inc., 931 F. Supp. 18, 23 (D. Mass 1995) (internal citations omitted). Accordingly, to retain legal protection for a trade secret, an "impenetrable fortress" need not be erected, Picker, 931 F. Supp. at 23, and "heroic measures" are not required. Data General Corp. v. Grumman Sys. Support Corp., 825 F. Supp. 340, 359 (D. Mass. 1993). Notwithstanding the inadvertent, unsealed filing of the TEQ in November 2006, EchoMail has taken reasonable steps to protect the secrecy of the information contained in that document.[1] For instance, on two other occasions, in connection with its motion for a preliminary injunction and in opposition to AmEx's motion for summary judgment, EchoMail filed the TEQ under seal. Furthermore, EchoMail has not distributed the TEQ or otherwise made the information in the TEQ available other than by transmitting the TEQ to AmEx in connection with the May 2005 Architecture

---

[1] In conjunction with this Opposition, EchoMail has filed a motion to seal the TEQ.

2

Review, adding language to each substantive page of the TEQ that "EchoMail shall have sole authority to further disseminate information specific to EchoMail, Inc. contained herein . . . ."

### B.    The Information in the TEQ is Not "Generally Known."

It is well-settled that information can lose its trade secret status if it is "generally known." "Generally known" in the trade secret context means known in the specific industry, or by those "who could obtain economic value from the information." Crane Helicopter Services, Inc. v. United States, 56 Fed. Cl. 313, 324 (2003); Microstrategy v. Bus. Objects, S.A., 331 F. Supp. 2d 396, 418-419 (E.D. Va. 2004) (explaining that "the requirement that the information not be generally known refers to the knowledge of other members of the relevant industry – the persons who can gain economic benefit from the secret."). However, the presence of information in the public files of a court, standing alone, does not make the information contained in the document "generally known." Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 419 (4th Cir. 1999). For instance, in Microstrategy, the defendant argued that the plaintiff's information should not be entitled to trade secret protection because the plaintiff revealed the information during the trial. 331 F. Supp. 2d at 418. The court concluded that the mere fact that the documents were filed unsealed and were available in public court does not destroy the secrecy of such documents *in the absence of evidence of further publication*. Id. (Emphasis added). Finding no further publication, the court concluded that the "information in question is as much a secret now as it was before the trial." Id. at 419.

Here, EchoMail inadvertently filed the TEQ unsealed with the Court, after having previously filed it under seal. It did not post the TEQ on its company website or anywhere else on the Internet. A link to the TEQ is not available through a Google search. The TEQ was not published in a trade journal, reference book or in an industry report, nor is there any evidence

3

that the information has been introduced to EchoMail's competitors. Furthermore, access to the TEQ through the Court's electronic docket requires a user to establish a PACER account, obtain a username and password, and pay eight cents per page prior to viewing any filings. A simple search will not disclose the document. In addition, AmEx has not offered any evidence that any of EchoMail's competitors have gained access to the TEQ.

This case is easily distinguishable from Religious Tech. Ctr. v. Lerma, in which the trade secrets in question had been in public court files for twenty-eight months, and, "[o]f even more significance," one of the documents had been copied from those files and posted on the Internet, resulting in further publication. 908 F. Supp. 1362, 1368 (E.D. Va. 1995). Thus, the information in Lerma was both disclosed in public court files *and* made "generally known" by Internet publication, resulting in the loss of its trade secret status. In this case, there is no indication that the TEQ was published, only that it was available in the Court's electronic files. Consequently, AmEx has not demonstrated that the information contained in the TEQ is "generally known" in the relevant industry as a result of the inadvertent filing.

      C.      **The Inadvertent, Unsealed Filing of the TEQ Does Not Support AmEx's Argument That EchoMail Should Be Precluded From Offering Evidence That it Contains Trade Secrets**

In Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411 (4th Cir. 1999), a case to which AmEx cites, a document was inadvertently filed unsealed and the court held that the fact that the document was in the court's public files did not necessarily destroy its trade secret status. Id. at 417. Instead, the court viewed this fact as "a single, non-dispositive factor to be weighed in determining whether the document's contents remain a trade secret." Id. at 418. Hence, even if the Court finds that the inadvertent, unsealed filing of the TEQ is a factor that it should consider in determining whether the TEQ contains trade secret information, the Court should

4

also consider that the TEQ was filed unsealed on November 1, 2006. This was nearly 18 months *after* AmEx's misappropriation of EchoMail's trade secret information. *See* <u>Diomed, Inc. v. Vascular Solutions, Inc.</u>, 417 F. Supp. 2d 137, 144 (D. Mass. 2006) (where the court took into consideration that the alleged misappropriation occurred before the patent was published).

## CONCLUSION

For the reasons set forth above, EchoMail respectfully requests that the Court deny AmEx's motion *in limine* and allow EchoMail to offer evidence and otherwise argue that the TEQ contains trade secrets and confidential information.

Respectfully submitted,

ECHOMAIL, INC.

By its attorneys,

/s/ Lisa A. Tenerowicz
_____
Alan D. Rose Jr. (BBO# 628871)
Lisa A. Tenerowicz (BBO# 654188)
ROSE, CHINITZ & ROSE
29 Commonwealth Avenue
Boston, MA  02116
Tel: 617-536-0040
Fax: 617-536-4400

Date: December 7, 2007

## CERTIFICATE OF SERVICE

5

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 7, 2007.

                                  /s/ Lisa A. Tenerowicz

                                  Lisa A. Tenerowicz