UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ECHOMAIL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-11318-NMG |
| ) | |
| AMERICAN EXPRESS CO. ) | |
| and IBM CORP., ) | |
| ) | |
| Defendants. ) | |
| ) | |

### ECHOMAIL'S OPPOSITION TO AMERICAN EXPRESS COMPANY'S MOTION IN LIMINE TO EXCLUDE ANY EVIDENCE OR ARGUMENT REGARDING ALLEGED CONTRACT DAMAGES PURPORTEDLY SUFFERED BY ECHOMAIL AFTER DECEMBER 31, 2005

In exchange for entering into the 2004 Amendment ("Amendment") of the Stand Alone Agreement ("Agreement"), EchoMail, Inc. ("EchoMail") and American Express Company ("AmEx") agreed to partially defer the payment of up-front fees under the parties' three-year contract. These payments are owed to EchoMail as provided in the Agreement. AmEx now seeks, through a motion *in limine*, to preclude EchoMail from presenting evidence of and argument on the terms of the Agreement and seeking damages pursuant to those terms. In effect, after the parties agreed to defer a portion of the contract amount to the second and third years of the deal, AmEx breached the Agreement, blocked EchoMail from performing, and seeks to avoid paying the amount remaining due on the contract. AmEx's motion should be denied and EchoMail should be permitted to offer evidence of the payment arrangement under the Agreement at trial. Moreover, although styled as a motion *in limine*, AmEx's motion is akin to a motion for partial summary judgment, and therefore should be denied as untimely.

# ARGUMENT

I.  **ECHOMAIL SHOULD BE PERMITTED TO OFFER EVIDENCE THAT IT IS ENTITLED TO DAMAGES FOR THE THREE-YEAR AGREEMENT.**

    A.  **The Express Terms of the Agreement Entitle EchoMail to Payment of the Deferred Upfront Fees.**

In its motion, AmEx argues that "[p]er its terms, the agreement at issue expired on December 31, 2005, and under the circumstances presented here, EchoMail cannot seek damages beyond that period based on a renewal provision."[1] AmEx Mem. at 1. Under the express terms of the Amendment, EchoMail is entitled to the payment of the fees for *Year One* that were partially deferred to Year Two and Year Three of the Agreement. Exhibit A to the Amendment sets forth the following payment schedule:

> [AmEx] agrees to pay according to the following payment schedule:
>
> **Year One**
>
> | Timing | Amount |
> |---|---|
> | March 1, 2005 | $1,086,860.00 (Infrastructure Leasing, *Year One* Software and Hardware Maintenance fees, *Year One* Hosting Fees, and *Year One* Security Fees)<br>EchoMail will accept payment in whole or in part anytime during the period August 16, 2004 to March 1, 2005 |
> | Monthly | Professional Services, BI Licenses, and CC Licenses |
>
> **Year Two**
>
> | Timing | Amount |
> |---|---|
> | March 1, 2006 | $486,860.00 (Infrastructure Leasing, *Year One* Software and Hardware Maintenance fees, *Year One* Hosting Fees, and *Year One* Security Fees) |
> | Monthly | Professional Services, BI Licenses, and CC Licenses |
>
> **Year Three**
>
> | Timing | Amount |
> |---|---|

---

[1] The Agreement only terminated if AmEx terminated it in writing, according to its terms. AmEx did terminate, but not as provided for in the Agreement. See Part I.B. and Part I.D., *infra*.

2

|               |                                                                                                                                              |
|---------------|----------------------------------------------------------------------------------------------------------------------------------------------|
| March 1, 2007 | $486,860.00 (Infrastructure Leasing, **Year One** Software and Hardware Maintenance fees, **Year One** Hosting Fees, and **Year One** Security Fees) |
| Monthly       | Professional Services, BI Licenses, and CC Licenses                                                                                          |

<u>See</u> Declaration of Lisa A. Tenerowicz in Opposition to American Express Company's Motion for Summary Judgment, Ex. 18 (emphasis added). As this payment schedule makes clear, under the terms of the Agreement, AmEx deferred two Year One payments of $486,860.00 each into the second and third years of the Agreement, effectively spreading out the total, upfront payment. The only payments to EchoMail that were contingent upon the renewal provision of the Agreement were the monthly charges for professional services, BI licenses and CC licenses. Accordingly, EchoMail should be entitled to present evidence of these payment terms at trial and seek damages under those terms.

      **B.**     **AmEx Terminated the Agreement on May 25, 2005.**

AmEx also argues that it terminated the Stand Alone Agreement on May 31, 2005, after it "learned that EchoMail had stopped performing services." AmEx Mem. at 2. Specifically, AmEx argues that "[i]n response to EchoMail's cessation of performance . . . [AmEx] sent a letter to EchoMail stating that [AmEx] 'consider[s] EchoMail in breach of the Agreement due to the discontinuance . . . by EchoMail of the services it was required to perform under the Agreement.'" AmEx Mem. at 2-3. In fact, as EchoMail has maintained since the inception of this litigation, AmEx terminated the Agreement on May 25, 2005 when, during a telephone call, AmEx representative Reena Panikar told several EchoMail representatives that the relationship between the parties was over. Prior to this conversation, EchoMail had been told by AmEx Vice President Greg Daniel that Panikar had authority to manage the entire relationship between EchoMail and all AmEx business units that were using EchoMail's product. In addition, Panikar

3

confirmed this. Under the present circumstances, AmEx should not be permitted to avoid paying the remaining upfront amount under the Agreement and use its own breach of the Agreement to justify doing so.

### C. EchoMail Demonstrated A Willingness to Perform Even After Panikar Terminated the Agreement.

After Reena Panikar terminated the Agreement on May 25, 2005, EchoMail learned that the leaders of other AmEx business units who were using EchoMail's product did not necessarily share Daniel's and Panikar's view that Panikar controlled the relationship between AmEx and EchoMail. See Declaration of Colleen Dechon in Support of Motion for Summary Judgment dated June 20, 2007 ("Dechon Decl."), Ex. AA. Thereafter, EchoMail attempted to contact the leaders of the other AmEx business units by email to inform them that EchoMail was willing to continue receiving and processing emails for these business units. Id. In those communications, EchoMail explained that in its view, the relationship between EchoMail and these business units had not been terminated. Id. These communications demonstrate EchoMail's willingness to continue to perform under the Agreement to the extent it was permitted to do so.

### D. The Stand Alone Agreement Included an Automatic Renewal Provision.

Finally, AmEx claims that "[p]er its terms, the agreement at issue expired on December 31, 2005, and under the circumstances presented here, EchoMail cannot seek damages beyond that period based on a renewal provision." AmEx Mem. at 1. AmEx has mischaracterized the terms of the Amendment to the Agreement. The Amendment provides for automatic renewal, thereby expressly refuting AmEx's contention that it ended on December 31, 2005:

> Effective Term of the Master Agreement shall be effective from July 15, 2004 until December 31, 2005. The Master Agreement *shall automatically renew* for an additional 12 month term from January 1, 2006 to December 31, 2006 unless [AmEx] terminates by written notice to [EchoMail] at least sixty (60) days prior to December 31, 2005. If the Master Agreement has been renewed for a second

4

> term, it *shall automatically renew* for a third term from January 1, 2007 to December 31, 2007 unless [AmEx] terminates by written notice to [EchoMail] at least sixty (60) days prior to December 31, 2006.

See Dechon Decl., Ex. A (Emphasis added). Hence, by the express terms of the Agreement, it would have automatically renewed for a second or third term absent express notice from AmEx to EchoMail. AmEx breached the Agreement on May 25, 2005, six days before it sent the May 31, 2005 letter to EchoMail. Consequently, AmEx should not be allowed to argue that EchoMail's alleged failure to perform relieves AmEx from performance or is the basis to preclude evidence of damages under the Agreement.

II.     **AMEX'S MOTION IS AKIN TO A MOTION FOR PARTIAL SUMMARY JUDGMENT AND SHOULD THEREFORE BE DISMISSED AS UNTIMELY.**

"[W]hen a motion *in limine* seeks to limit damages, it is treated as a motion for partial summary judgment." Point Productions A.G. v. Sony Music Entm't, Inc., 215 F. Supp. 2d 336, 340 (S.D.N.Y. 2002). Where, as here, the time for filing summary judgment motions has already passed, AmEx's motion should be denied as time-barred. See George v. Ford Motor Co., 2007 WL 2398806, *5 (S.D.N.Y. Aug. 17, 2007) (where defendant's motion *in limine* was really a "covert motion for partial summary judgment," the court decided that the issue would be better addressed at or after trial); see Needham v. Roho Group, 2005 WL 2290344, *1-2 (E.D. Mich. Sept. 1, 2005) (where defendant's motions *in limine* were more akin to motions for summary judgment, the court would not rule on them). AmEx's motion, although styled as a motion *in limine*, is in fact a motion for partial summary judgment on EchoMail's breach of contract claim, and should be denied.

## CONCLUSION

For the reasons set forth above, EchoMail respectfully requests that the Court deny AmEx's motion *in limine* and allow EchoMail to offer evidence and to argue that it is entitled to damages for the three-year Agreement.

Respectfully submitted,

ECHOMAIL, INC.

By its attorneys,

/s/ Lisa A. Tenerowicz
_____
Alan D. Rose Jr. (BBO# 628871)
Lisa A. Tenerowicz (BBO# 654188)
ROSE, CHINITZ & ROSE
29 Commonwealth Avenue
Boston, MA  02116
Tel: 617-536-0040
Fax: 617-536-4400

Date: December 7, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 7, 2007.

/s/ Lisa A. Tenerowicz
_____
Lisa A. Tenerowicz