UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ECHOMAIL, INC.,  )<br>  )<br>          Plaintiff,  )<br>  )<br>v.  )<br>  )<br>AMERICAN EXPRESS CO.  )<br>and IBM CORP.,  )<br>  )<br>          Defendants.  )<br>_____) | Civil Action No. 05-11318-NMG |

**PLAINTIFF ECHOMAIL'S OPPOSITION TO AMERICAN EXPRESS
COMPANY'S MOTION IN LIMINE TO PRECLUDE THE INTRODUCTION
OF EVIDENCE OR ARGUMENTS REGARDING ISSUES PREVIOUSLY
<u>ADJUDICATED THROUGH SUMMARY JUDGMENT</u>**

American Express Company ("AmEx") seeks to preclude the introduction of evidence or arguments regarding issues previously adjudicated through summary judgment.[1] Specifically, AmEx seeks to prevent EchoMail from introducing at trial any "evidence or argument relating to IBM," and "all other issues resolved by summary judgment," purportedly because such evidence would unfairly prejudice AmEx, confuse the jury, and waste the Court's time. AmEx Mem. at 1. This motion should be denied and EchoMail should be permitted to introduce evidence of IBM Corporation's ("IBM") role in the matters at issue for two reasons. First, IBM's participation in the key events in this case is highly relevant to EchoMail's remaining claims against AmEx. Second, any potential prejudicial effect of this evidence is substantially outweighed by its probative value, and precluding EchoMail from introducing evidence of the relationship between AmEx and IBM and the role that IBM personnel played in the events surrounding the May 2005 Architecture Review would significantly impair EchoMail's ability to prosecute its claims.

---

[1] AmEx styles its motion as relating to preclusion of issues already adjudicated. However, its motion is nothing more than an attempt to keep out evidence of the fact that AmEx surreptitiously included IBM in all phases of the deep dive Architecture Review without advising EchoMail in advance.

Finally, AmEx is not entitled to the limiting instruction it seeks concerning IBM's role in this case.

## ARGUMENT

I. **ECHOMAL SHOULD BE PERMITTED TO INTRODUCE EVIDENCE RELATING TO IBM AT TRIAL.**

   A. **Evidence Relating to IBM, Including IBM's Participation in the May 2005 Architecture Review is Highly Relevant to EchoMail's Claims Against AmEx.**

AmEx argues that because the Court dismissed EchoMail's claims against IBM on summary judgment there is no relationship between IBM and EchoMail's remaining claims. Therefore, AmEx argues that all evidence relating to IBM is no longer relevant and is inadmissible at trial under Fed. R. Evid. 402. ("Evidence which is not relevant is not admissible"). AmEx's position is unfounded. At the heart of this motion is AmEx's apparent fear that the jury will hear evidence that AmEx invited IBM to participate in the Architecture Review without EchoMail's knowledge or consent, and, without EchoMail's knowledge, permitted IBM personnel to access EchoMail's confidential and proprietary information through the Project Governance Board database prior to, during, and after the Architecture Review. Indeed, it is AmEx's inclusion of IBM in the deep dive Architecture Review that EchoMail contends is a breach of contract.

   1. *Evidence Relating to IBM is Relevant to EchoMail's Misappropriation of Trade Secrets Claim and Chapter 93A Claim Against AmEx.*

AmEx first charges that "testimony and evidence regarding IBM is irrelevant, and therefore inadmissible, with respect to" EchoMail's misappropriation of trade secrets claims, Am Ex. Mem. at 5, and that "any evidence or argument regarding IBM should not be admissible in support of [EchoMail's Chapter 93A] claim against [AmEx]." AmEx Mem. at 6. Under Fed. R.

Evid. 401, "'[r]elevant evidence' means evidence having *any tendency* to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." (Emphasis added). Evidence of IBM's role in the Architecture Review, including AmEx's decision to allow IBM personnel to access EchoMail's confidential and proprietary information prior to, during, and after the Review, and AmEx's subsequent decision to engage a new inbound email vendor is highly relevant to EchoMail's claims against AmEx. This evidence makes it more probable that *AmEx* misappropriated EchoMail's trade secret information by permitting IBM to participate in the Architecture Review and contribute to the subsequent TDC report, which AmEx then used to guide its search for a new email vendor.

Evidence relating to IBM also makes it more probable that AmEx's conduct prior to, during, and close on the heels of the Architecture Review was "immoral, unethical, oppressive or unscrupulous," and thus unfair and deceptive in violation of Mass. Gen. Laws. C. 93A. In arguing that the fact issues regarding AmEx's "premature search for a replacement, the refusal to accept assistance with the upgrade and the mischaracterization of the [Architecture Review]" is "specific to [AmEx], and has nothing to do with IBM," see AmEx Mem. at 6, AmEx asks the court to ignore its misconduct in including IBM in the Architecture Review process. Evidence relating to IBM is highly relevant to these claims and is admissible under Fed. R. Evid. 401.

        2.    *Evidence Relating to IBM is Relevant to EchoMail's Claims for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing.*

AmEx next claims that neither the breach of contract claim nor the breach of the implied covenant of good faith and fair dealing claim require evidence related to IBM. See AmEx Mem. at 6. In particular, AmEx claims that if IBM has not used EchoMail's trade secrets, "then

EchoMail could not have suffered any damages as a result of IBM obtaining access to those alleged trade secrets. As a result, evidence relating to IBM is not relevant to these claims." AmEx. Mem. at 6. Again, AmEx has mischaracterized the issues and EchoMail's position with respect to the relevant events. By, among other things, inviting IBM representatives to the Architecture Review, and sharing EchoMail's trade secrets with IBM, AmEx breached its contractual relationship with EchoMail. The fact that AmEx was the breaching party does not, as AmEx appears to suggest, render IBM's participation in the breach irrelevant. Indeed, IBM's inclusion *is* the breach (among other breaches). The fact that IBM is no longer a party in the case does not compel the conclusion that IBM's participation in the Architecture Review process is no longer relevant. To the contrary, evidence relating to IBM remains relevant and is admissible under Fed. R. Evid. 401.

        **B.**       **The Probative Value of Evidence Relating to IBM Far Outweighs Any Potential Prejudice to AmEx, Will Not Confuse The Jury and Will Not Waste the Court's Time.**

AmEx argues that "[t]he introduction of argument or evidence related to IBM would certainly lead to juror confusion, especially here, where IBM has been eliminated from the case on summary judgment." AmEx Mem. at 8. As explained above, evidence and argument related to IBM is highly relevant to EchoMail's claims against AmEx. Under Fed. R. Evid. 403, relevant evidence may be excluded only if "its probative value is ***substantially outweighed*** by the danger of unfair prejudice, confusion of the issues, or misleading the jury." (Emphasis added). There is no such danger here. The alleged "prejudicial" effect that AmEx points to is actually the concern that the jury will be exposed to and understand AmEx's wrongful conduct. This concern falls far short of the requirements to exclude evidence under Rule 403.

Similarly, AmEx's concern for juror confusion is misplaced. The introduction of evidence relating to IBM, in particular the role that IBM played in preparing for the deep dive Architecture Review and contributing to the comprehensive report AmEx prepared after the Architecture Review, is not likely to confuse a jury. Indeed, in order to understand the claims in the case, jurors must know that AmEx provided information to IBM and allowed IBM to participate in all aspects of the Architecture Review. What would truly confuse the jury would be to exclude highly relevant evidence that explains the foundation of some of the claims in the case.

Finally, there would be no waste of the Court's time in allowing EchoMail to introduce evidence concerning the role IBM played in the key events. What would be a waste of time would be to try a case to a jury and not present all relevant evidence as AmEx seeks to do.

## II.  EVIDENCE OR ARGUMENT RELATED TO ALL CLAIMS RESOLVED ON SUMMARY JUDGMENT SHOULD NOT BE PRECLUDED.

AmEx also argues that evidence or argument regarding EchoMail's claims for unfair competition and tortious interference with business relations should be precluded because these claims were resolved on summary judgment. Although AmEx states that evidence related to these claims should be excluded, AmEx does not point to any specific evidence that it seeks to exclude nor does it offer an evidentiary basis for the relief it seeks. AmEx appears to be moving *in limine* to preclude any mention of these two claims. Although EchoMail agrees that it cannot argue for relief on the two claims already adjudicated, AmEx has not set forth any evidence which should not be admitted at trial. Moreover, much of the evidence related to the claims in this case overlaps, and, as a result, EchoMail should not be precluded from offering evidence that

supports its remaining claims simply because that evidence may also have supported the claims that have been adjudicated.[2]

## III.   AMEX IS NOT ENTITLED TO A LIMITING INSTRUCTION.

Alternatively, AmEx seeks a limiting instruction, pursuant to Fed. R. Evid. 105, which informs the jury that "all claims against IBM have been dismissed as they lacked any evidentiary support, that IBM has not used any EchoMail information, and that any disclosure of information to IBM did not damage EchoMail in any way." AmEx Mem. at 9. AmEx has not offered any reason for such an instruction other than the conclusory statement that without a limiting instruction, "there is a significant risk of the very confusion and prejudice that Fed. R. Evid. 403 and 105 were designed to prevent." AmEx. Mem. at 9-10. This conclusory statement hardly supports the relief AmEx seeks. Moreover, there is no reason to instruct the jury about claims which are not being tried to it.

## CONCLUSION

For the foregoing reasons, the Court should deny AmEx's motion *in limine* to preclude the introduction of evidence or argument regarding issues previously adjudicated through summary judgment and allow EchoMail to introduce evidence relating to IBM, including but not limited to, the role IBM played prior to, during, and after the May 4-5, 2005 Architecture Review conducted by AmEx. In addition, the Court should deny AmEx's request for a limiting instruction.

---

[2] Notably, AmEx's motion makes no mention of its counterclaim for replevin, which was also resolved on summary judgment. As the Court ruled in its July 14, 2006 Order, its allowance of AmEx's motion for summary judgment on the replevin counterclaim "does not foreclose EchoMail from seeking reimbursement of such costs provided that plaintiff can prove that it is legally entitled to be repaid." July 14, 2006 Order, at 9. Accordingly, EchoMail should be allowed to offer evidence of costs incurred in converting AmEx's customer information to flat file format and that EchoMail is entitled to be repaid for its services as provided in the Agreement.

Respectfully submitted,

ECHOMAIL, INC.

By its attorneys,

/s/ Lisa A. Tenerowicz

---

Alan D. Rose Jr. (BBO# 628871)
Lisa A. Tenerowicz (BBO# 654188)
ROSE, CHINITZ & ROSE
29 Commonwealth Avenue
Boston, MA  02116
Tel: 617-536-0040
Fax: 617-536-4400

Date:  December 7, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 7, 2007.

/s/ Lisa A. Tenerowicz

---

Lisa A. Tenerowicz